CHARLES F. PAINE & another, executors, *vs.* LUCELLA P.
HOLLISTER.

Suffolk.    Jan. 26. — March 25, 1885.    DEVENS, W. ALLEN, & COLBURN,
JJ., absent.

An antenuptial contract between A. and B. recited that A. had agreed to accept
a certain provision to be made for her by B. as a substitute for all the rights,
claims, and interests to which she might be entitled in or to the real and per-
sonal estate of B. in the event of her becoming his widow.  A sum was then
stated, to be paid one half in six months and one half in twelve months after
the death of B.  A. covenanted that she accepted the provision in lieu and in
full satisfaction of all dower and homestead, and of all other rights to which
she might at any time thereafter be entitled in or to any land of B., and in full
satisfaction of, and as a substitute for, any distributive share, part, or allow-
ance to which she would be entitled in or to the personal estate or property of
B. in the event of her becoming his widow ; and that the instrument should be
a bar, both in law or equity, to any claim A. might make to any part of the
real or personal estate of A. except the provision made for her.  B. died, and A.
petitioned the Probate Court, under the Pub. Sts. *c*. 135, § 2, for an allowance
from B.'s estate.  The executor of B.'s will brought a bill in equity to restrain
A. from prosecuting the petition.  Before the hearing on the bill, A. received
from the executor the sum stated in the contract.  *Held*, that the plaintiff in the
bill in equity was entitled to a decree.

HOLMES, J.    This is a bill in equity, brought by the executors
of Whiting H. Hollister to enjoin his widow from prosecuting a
petition to the Probate Court, under the Pub. Sts. *c*. 135, § 2,
for an allowance out of his estate, contrary to the terms of an
antenuptial contract between her and him.

We cannot doubt that the contract was intended to exclude
every kind of claim on the part of the defendant, as well one
for an allowance as one for a distributive share.    The preamble
recites that the defendant " has agreed to accept of said provis-
ion in the place of, and as a substitute for, all the rights, claims,
and interests to which she may hereafter be entitled in or to
the real and personal estate of the said Hollister," in the event
of her becoming his widow.    Then follow the provisions for
the defendant, by which she is to be paid $12,000, one half
in six months and one half in twelve months after his death.
Then the defendant covenants that she accepts the provisions
in lieu and in full satisfaction of dower, homestead, and all
other rights to which she may at any time thereafter be entitled

in or to any land of Hollister, and also " in full satisfaction of, and as a substitute for, any distributive share, part, or allowance to which she would be entitled in or to the personal estate or property of said Hollister in the event of her becoming his widow." Finally, she covenants "that this instrument shall be a bar, both in law or equity . . . . to any claim she may make to any part of the real or personal estate of the said Hollister, except the said twelve thousand dollars." It would have been difficult for the parties to have expressed themselves more explicitly. See *Tiernan* v. *Binns*, 92 Penn. St. 248.

Again, there is no doubt that the contract is lawful in its general features, that it was not extinguished by the marriage of the parties, and that a resort to equity is proper to enforce it. *Tarbell* v. *Tarbell*, 10 Allen, 278. *Jenkins* v. *Holt*, 109 Mass. 261. *Blackinton* v. *Blackinton*, 110 Mass. 461.

The respondent contends that it is against public policy to allow a woman to bar herself of her allowance by an antenuptial contract, and that, at most, the contract is only a circumstance to be considered by the Probate Court on the question of granting the allowance. With regard to the latter contention, it is a little hard to see how a contract not to ask for an allowance can be considered by the Probate Court in determining what allowance it will grant. If the defendant has a right to repudiate it, it is at an end, and is not to be considered. If she has not the right, then she should be enjoined. *Blackinton* v. *Blackinton*, *ubi supra*. With regard to the question of public policy, it is not necessary to decide whether women still retain the benefit of their former position of tutelage so far as to be allowed to repudiate a contract of this nature, although fair, and honestly made, while it remains executory, or whether it could be repudiated, if at all, on any terms short of renouncing the whole contract in which it is contained. For it is agreed that, since the bill was filed, the defendant has accepted the whole sum provided for by the marriage settlement; and, by the agreement, this is to be taken as a fact in the case, so that all technical questions are waived. The defendant must be taken to have accepted this sum under the contract, and under her husband's will, which directs it to be paid over to her "provided . . . . she shall by proper deed or deeds release all her right, title, and

interest in and to all the real and personal estate and property which belonged to me during our marriage." Whatever argument may be urged against a woman's power to cut herself off in advance from temporary relief to her immediate necessities upon her husband's death, when the time has arrived, and she knows what those necessities are, there can be no objection to her accepting a much larger sum than could be allowed her, upon the terms that she should not ask an allowance in addition. Even if we should go the length of saying that the original contract, so far as it cut her off from an allowance, was not only voidable but void, a suggestion to which we do not mean to give the slightest countenance, still under the present circumstances she would be precluded by the principle of election from claiming a benefit inconsistent with that which she has accepted.

*Decree for the plaintiffs.*

*J. D. Ball*, for the plaintiffs.

*S. B. Allen*, (*W. B. Allen* with him,) for the defendant.