[Sac. No. 357.   Department Two.—May 31, 1898.]

In the Matter of the Estate of ROBERT B. WINSLOW, Deceased.

HOMESTEAD—ABANDONMENT—CONTRACT BETWEEN HUSBAND AND WIFE.—A contract between a husband and wife for a separation between them which provided for an equal division of all property between them, including the homestead, referred to as the residence of the parties, and which specified that, inasmuch as the real estate was incapable of partition, a fixed valuation of all of the property, real and personal, was agreed upon, one-half of which valuation was paid by the husband to the wife, and in which the wife renounced and relinquished all claims of every kind against the husband, and granted and conveyed to him all of her title in the property—the same having been acknowledged by both parties, and duly recorded—operated as an abandonment of the homestead by both spouses, within the meaning of sections 1243 and 1244 of the Civil Code.

ID.—FORM OF ABANDONMENT—DESIGNATION OF HOMESTEAD.—The law has prescribed no form of words for the abandonment of a homestead, and the meaning of an instrument intended to have that effect is to be determined by the rules which control the interpretation of other contracts, and where the provisions of an instrument executed and acknowledged by both husband and wife, and recorded, cannot have their natural and obviously intended effect without an abandonment of the homestead, it will be construed as such; nor is it necessary that the instrument shall expressly refer to the property as a homestead, in order to operate as an abandonment thereof, where such abandonment follows from the provisions of the instrument.

APPEAL from an order of the Superior Court of Sacramento County setting apart a homestead to the widow of a deceased person.   Matt. F. Johnson, Judge.

The facts are stated in the opinion of the court.

A. A. De Ligne, and Hiram W. Johnson, for Appellant.

C. H. Oatman, for Respondent.

BRITT, C.—Robert B. Winslow and his wife Emily resided on a lot of land, which was community property, in the city of Sacramento; in the year 1890 the wife declared a homestead on the land in manner conformable to the statute.   On May 28, 1895, said married parties jointly executed a written instrument reciting that differences had arisen between them, that

they desired to adjust the same and also their property rights without resort to the courts, and that they had agreed upon a division of their property, particularly described, in accordance with the provisions of such instrument; the property described included the said lot of land, which was referred to as the residence of the parties, and was the only real estate mentioned; it was then declared in said instrument that the said property "is hereby equally divided between the parties; and inasmuch as the said real estate is incapable of partition, it is further agreed that the whole of the aforesaid property, both real and personal, is of the value of four thousand seven hundred dollars," and in consideration of the premises and of the sum of two thousand three hundred and fifty dollars, one-half the said value, to her paid, the wife renounced and relinquished all claims of every kind against the husband, and granted and conveyed to him all her right, title, and interest in and to all the said property, and released him from all obligation for alimony, etc., and agreed never to make any claim on him in any manner whatsoever; and the husband on his part released the wife from all claims he might have or assert against her; it was further agreed that "henceforth the parties shall live separate and apart from each other, it being understood that this agreement is and shall operate as a complete settlement and adjustment of all their property rights and relations and affairs." Said instrument was duly acknowledged by both parties and recorded in the office where the previous declaration of homestead was recorded. Said Emily further executed to said Robert a formal deed of grant purporting to convey to him the said lot of land "as and for his sole and separate property," which was recorded in the same office. He paid to his wife the sum of two thousand three hundred and fifty dollars, mentioned in their contract, mortgaging the land to raise a portion thereof.

The parties separated; and in January, 1896, the husband died, leaving no children. In course of administration of his estate, his widow, the said Emily, petitioned the superior court to set over the said land to her, claiming that the homestead thereon was never abandoned, and that she was entitled to the same as survivor of the marital community. It was valued at three thousand two hundred dollars. Her petition was con-

tested by the mother of the deceased; the court, however, granted the same, and the contestant has appealed.

Under sections 158 and 159 of the Civil Code, Winslow and wife had contractual power to deal between themselves with the homestead as property in any manner not forbidden by law; but it is provided in sections 1243 and 1244 of the same code that a homestead of a married claimant can be abandoned only by a declaration of abandonment, or a grant thereof, executed and acknowledged by both husband and wife, and recorded in the proper office; and respondent contends that the said contract between herself and her husband constituted no abandonment of the homestead within this requirement of the statute. It is urged that admitting the language of the instrument to be expressive of the purpose of the wife to abandon her rights of homestead in the land, yet the husband did not abandon, and hence, under the statute, the abandonment by the wife alone was ineffectual.

The law has prescribed no form of words for the abandonment of a homestead, and the meaning of the said instrument of May 28, 1895, is to be determined by the same rules which control the interpretation of other contracts; among those rules are that the mutual intention of the parties will be given effect so far as the same is lawful and ascertainable from the language employed and the attendant circumstances; that each clause of the contract is to be looked to for light in interpreting the others; and that those things which are necessary to give the contract effect are implied therefrom, unless its terms repel the implication. Now, throughout the instrument before us the manifest paramount object of the contract is a division of property, to be final and complete; the parties covenanted that the agreement should operate "as a complete settlement and adjustment of all their property rights and relations and affairs." If the homestead right persisted notwithstanding the contract, then, instead of evidencing a complete settlement of rights in the property described and a division thereof, the instrument effected an adjustment extremely imperfect and incomplete, even during the joint lives of the parties; for in that case neither party could convey or encumber the property without the concurrence of the other, and in case of an action for divorce it would still have been within the power of the court to assign as a homestead under section

146 of the Civil Code. It is clear that the parties meant to deal with the unfettered fee in the land, not a mere life estate of either party. The homestead of married persons in this state has been so often likened to an estate in joint tenancy that we need not cite the cases which note the resemblance; what would be thought of a contract between joint tenants, in terms designed to effect a division, complete and final, of the property held by them, which should yet leave intact the right of survivorship? Certainly, all intendments would be indulged against that construction. We hold, therefore, that the contract between Winslow and wife—the same having been acknowledged by both and duly recorded—was an abandonment of the homestead by both spouses; such abandonment follows from the provisions of the instrument, for they cannot have their natural and obviously intended effect without it.

Respondent has cited several cases claimed to be illustrative of the one at bar. (*Burkett v. Burkett*, 78 Cal. 310; 12 Am. St. Rep. 58; *Oaks v. Oaks*, 94 Cal. 66; *In re Lamb*, 95 Cal. 397, and others.) It seems unnecessary to review those cases; our conclusion in no wise conflicts with them. *In re Davis*, 106 Cal. 453, has some similarity to the present case; there an agreement much like that of Winslow and wife—though apparently not involving a homestead—was enforced according to its terms; the court said that the obvious purpose thereof was "not only to definitely sever the property rights of the parties, but mutually to relinquish all inheritable interest of each in the property and estate of the other."

The point that the homestead was not abandoned because the contract in question did not expressly refer to the property as a homestead is not well taken. (See *Head v. Auberry* (Ky., Jan. 23, 1897), 38 S. W. Rep. 863; *Withers v. Pugh*, 91 Ky. 522.) The order appealed from should be reversed.

Searls, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed.

McFarland, J., Temple, J., Henshaw, J.