[S. F. 6201.  Department Two.—January 20, 1913.]

In the Matter of the Estate of J. ALEXANDER YOELL, Deceased.

In the Matter of the Application of Emily C. Yoell for a Family Allowance.  EMILY C. YOELL, Petitioner and Respondent, v. EVALINE A. LEVY, Special Administrator, etc., Contestant and Appellant.

FRAUD—NECESSITY OF PLEADING.—Fraud is not presumed, and whenever it constitutes an element of a cause of action which is of an affirmative nature or is invoked as conferring a right, it must be alleged.

ESTATE OF DECEASED PERSON—FAMILY ALLOWANCE TO WIFE—SEPARATION AGREEMENT—FRAUD OF HUSBAND NOT PLEADED.—Where a wife, who had been living separate and apart from her husband, up to the time of his death, under written articles of separation, applies for a family allowance from his estate, and at the time of filing her petition therefor had knowledge of fraudulent acts of her husband which would nullify the effect of such separation articles as a bar to her receiving such allowance, it was incumbent upon her to have pleaded the fraud.  In the absence of such pleading, the agreement remained unimpeached for fraud before the trial court on the application for the allowance, and the rights of the parties were to be adjudicated in accordance with its legal terms and effect.

ID.—SEPARATION AGREEMENT AS DEFENSE TO CLAIM FOR ALLOWANCE—EVIDENCE TO SHOW AND REBUT FRAUD—NECESSITY OF FINDINGS—REVIEW ON APPEAL.—On such an application, in which the personal representative of the estate sets up the separation agreement as a defense, if it be assumed that the petitioner had the right, under the implied replication allowed by section 462 of the Code of Civil Procedure, to give evidence of the fraud, the representative of the estate would have the right, by way of implied rejoinder, to prove estoppel, a failure to rescind, laches, the statute of limitations, or any other matter of defense.  On the new issues so raised, the trial court must make specific findings one way or the other, before a judgment can be entered for an allowance, and before such matters can be reviewed upon appeal.

ID.—HUSBAND AND WIFE—SEPARATION AGREEMENTS NOT AGAINST PUBLIC POLICY.—Notwithstanding the confidential relations which exist between husband and wife, separation agreements, providing for the division of all the community property of the parties, and obligating each of them not to assert any claim against the estate of the other, are not against public policy, and may be entered into and

will be enforced in accordance with their terms when undue advantage has not been taken of either spouse.

ID.—WAIVER OF RIGHT TO FAMILY ALLOWANCE—NO MINOR CHILDREN AT TIME OF APPLICATION.—A wife may, by the terms of a separation agreement, waive her right to receive a family allowance from the estate of her husband, notwithstanding there were minor children at the time the agreement was executed, if such children had ceased to be minors at the time her application for an allowance was made.

ID.—PROVISION FOR DEEDS FROM AND TO SPOUSES—INVALID TRUST TO CONVEY LAND—ESTOPPEL TO ASSERT INVALIDITY OF AGREEMENT.— Where the separation agreement provided, as a mode of establishing title to the real property divided by the spouses, that deeds should be made by them to a third person, who in turn should make to them the deeds contemplated by the agreement, they are estopped to assert the invalidity of the agreement on the ground that it created a void trust to convey land, if they assented to the deeds so made to them, acted under them, and maintained actions in the court to enforce them.

ID.—INVALIDITY OF MEANS TO CARRY OUT VALID CONTRACT.—The provision for deeds to and from such third person was a mere means for carrying into effect the principal purposes of the agreement, but was not an integral nor an essential part of it, and after such method was executed and accepted by both parties, the entire contract, in itself valid, will not be permitted to fall because of the supposed invalidity attaching to the means adopted.

ID.—RIGHT TO FAMILY ALLOWANCE—CONDITIONS ESSENTIAL TO RIGHT. Upon the death of the husband the surviving wife may receive a family allowance when and only when she is a member of the family and receiving or entitled to receive support as such member, and when, even though a member of the family, she has not parted with or relinquished her right to make demand for such allowance.

ID.—WAIVER OF RIGHT TO ALLOWANCE—RENUNCIATION OF CLAIM AS HEIR AND AS SURVIVING WIFE.—A provision in a separation agreement, by the terms of which the wife renounced and waived all claim which she has or may have against her husband's estate as *heir* of the husband or as his *surviving wife*, is a relinquishment of her right to a family allowance, notwithstanding such right was not renounced *eo nomine.*

ID.—WIFE CEASING TO BE MEMBER OF HUSBAND'S FAMILY—WANT OF RIGHT TO SUPPORT.—A wife who has voluntarily and deliberately severed her relationship as a member of her husband's family, and whose right to support by him does not rest upon the family relationship, but upon the terms of articles of separation, is not entitled to a family allowance from his estate.

ID.—PROBATE COURT MAY CONSTRUE AND ENFORCE SEPARATION AGREE-
MENT.—The court in probate, on an application by the surviving
wife for a family allowance from her husband's estate, has equitable
jurisdiction to pass upon the effect and validity of a separation
agreement, which has been interposed as a defense by way of estop-
pel to her claim.

APPEAL from an order of the Superior Court of the City
and County of San Francisco awarding a surviving wife a
family allowance from the estate of her deceased husband.
Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Carl Westerfeld, and Sullivan & Sullivan, and Theo. J.
Roche, for Appellant.

J. L. Taugher, for Respondent.

HENSHAW, J.—J. Alexander Yoell died in July, 1904.
In 1909 his widow, Emily C. Yoell, petitioned for a family
allowance. Her petition was opposed by the special adminis-
tratrix, but the court, after hearing, awarded a family allow-
ance in the sum of one hundred dollars a month, dating from
the death of the husband. From this order the appeal under
consideration is taken.

As ground of opposition the special administratrix set up a
post-nuptial agreement between the deceased and his wife,
with appropriate averments, to the effect that it had been
faithfully carried out according to its tenor and terms by the
deceased during his lifetime, and with further allegations
tending to show upon the part of Emily C. Yoell, respondent
herein, a full acceptance of all of the benefits and considera-
tions moving to her under the agreement. Thus, it is alleged
that during the lifetime of the parties, Emily C. Yoell sold
certain real property which, under the articles of separation, be-
came hers, subject to a life estate in the husband, and caused
her grantee to begin a suit to quiet his title to the property so
conveyed, which action resulted in a decree so doing, in con-
firmation of the terms of the articles of separation. The
validity of the articles of separation it is further alleged was
established in another action brought by the husband against

the wife and others, which action was to settle conflicting claims to certain of the real estate disposed of under the article of separation, and which action resulted in a valid and subsisting decree establishing the title to the property in accordance with the terms of the articles of separation. Again, it is alleged that after the death of J. Alexander Yoell, his wife, this respondent, took appropriate proceedings in certain of the superior courts of the state to have decrees entered declaring the termination of the life estate of her husband in the property, and vesting the fee thereof, untrammeled by the life estate, in her, all in accordance with the terms of the articles of separation, and that decrees to this effect in favor of the widow were duly given and made.

Under these pleadings, thus sufficiently indicated, the matter came on for hearing. The court found that immediately after the execution of the separation agreement Yoell and his wife separated as husband and wife by mutual consent and continued to live apart until the death of the husband; that the husband paid to his wife continuously during many years and up to the time of his death three hundred and fifty dollars a month, as called for by the articles of separation. Then by finding XII the court declared: "That there is no covenant, term or condition in the said separation agreement which deprives Emily C. Yoell of the right to a family allowance during the progress of the administration of the said estate and that she is entitled to such allowance to be paid to her out of the said estate, notwithstanding such separation agreement or anything done thereunder or in pursuance thereof." Thus the award of the family allowance was made. The evidence disclosed that J. Alexander Yoell and his wife Emily C. Yoell had been married for thirty-five years and that to them seven children had been born, when differences arose between them culminating in an action for divorce brought by the wife against the husband. A reconciliation was effected, the action was dismissed, but within a year harmony was once more destroyed, the wife left the home and began a second action for divorce in April, 1898. This action was never tried and in fact was finally dismissed. Negotiations were opened looking to an adjustment of their differences without divorce, and articles of separation were entered into. It appears that throughout Mrs. Yoell was fully

cognizant of the nature, character, and value of her husband's properties, besides which, as to those values and as to the terms of the agreement of separation, she had acted upon the advice of her counsel, an attorney at law. The articles of separation, as formulated, agreed upon, and executed, described the husband as the party of the first part, the wife as party of the second part, and proceeded as follows:

"Whereas, unhappily there exist marital differences between the said parties of the first and second parts, which, in their opinion, render it impossible that they can longer live together as man and wife, and in consequence thereof they have agreed to live separate and apart from each other, and,

"Whereas, it is the desire of said party of the first part to make a permanent provision to the party of the second part, and it is the desire of both parties hereto that all of the property rights of the parties of the first and second parts respectively, shall be finally adjusted, settled and determined:

"It is now mutually agreed and understood as follows:

I.

"That the parties hereto have agreed and do now agree to an immediate separation as husband and wife and do now agree to live for the future separate and apart from each other."

The agreement then made provision to the effect that the real property of the community (and all of the property of the husband was community property) should be divided in moieties, the husband and the wife each taking an undivided half of the fee of each piece or parcel, but that the husband should have a life estate in the one-half so conveyed to the wife, and in lieu of the income which otherwise the wife would derive from her property, the husband was to pay her three hundred and fifty dollars per month, the explanation of this being that it was thought the husband could better manage the properties by having control over them all, and that three hundred and fifty dollars per month represented the full net rental value of the undivided one-half. Next (so proceeds the agreement) it is declared that: "The true intent and meaning of this agreement is that upon the death of the said party of the first part, the said party of the second part shall be entitled to the full, entire, undivided one-half of said four described pieces and parcels of land, in fee simple." And

"it is further covenanted and agreed . . . that the execution of this agreement and the consummation thereof by the execution and delivery of said various instruments shall be and is intended to be a full, complete and final adjustment of all the property rights of the parties hereto, and that neither party hereto shall or will at any time hereafter make or attempt to make any other or further claim than as herein stipulated. That the property stipulated to be conveyed shall be and remain forever the separate property of each of the parties hereto and neither of the parties hereto will claim as against the other or as against their heirs or legal representatives or otherwise, the increase in value of the undivided one-half of any of said property or make or advance any claim that any portion thereof is community property.

"It is further covenanted and agreed that either of the parties hereto shall have an immediate right to devise or bequeath by will their respective interests in the property belonging to each other under the provisions of this agreement; and that the devisees and legatees under any such will shall and may have the same privileges and rights as the respective testators may have had or exercised.

"It is further expressly covenanted and agreed that neither party hereto will in any way or manner contest or oppose the probate of the other's will, whether heretofore or hereafter made, or interfere with the other, their heirs or assigns, in the exercise of the rights of property herein stipulated and agreed to; that neither of them will at any time hereafter assert any right, interest, or title as heirs at law of the other to any property devised or bequeathed by such will, or as against the estate of the other, should the other die intestate and all claim as such heir, or as surviving husband and wife, respectively, and all right to contest or oppose the last will of the other is hereby expressly waived, together with all right to administer or to apply for letters of administration, or letters of administration with the will annexed, upon the estate of the other."

It has been pointed out that the court's award of a family allowance was based upon its legal construction of the tenor and effect of these articles of separation, the court stating this legal conclusion as a finding of fact that the articles contained no covenant, term, or condition depriving Emily C. Yoell

of the right to a family allowance. In addition this respondent insists that the agreement is void or voidable or nonenforceable by reason of the fraud practiced upon Emily C. Yoell by her husband in the very procurement of the execution of the articles of agreement and in his conduct subsequent thereto. Of the nature of this fraud it is unnecessary here to say more than that under the views of respondent's counsel, it was so comprehensive and apprehensive in its perfidiousness that it would have excited the envious admiration of Machiavelli. To this appellant, protesting that the matter may not here be considered, makes answer that no fraud is shown in anywise vitiating the agreement, that no fraud is shown in anywise justifying the respondent in the repudiation of the agreement, that the asserted fraud was fully known to the respondent shortly after the execution of the agreement, and that after this knowledge she reaffirmed it in every possible particular, both by failure to rescind, by accepting all the benefits conferred upon her by it, by the invocation of judicial process and judicial decree establishing her rights under it, by the submission and assent to like judicial decrees brought to establish the validity of it by her husband, and finally, by the petition and assertion of her rights under it after her husband's death in terminating the life estate and securing to herself the untrammeled fee of the properties, so that, finally, by estoppel, by laches, and by the statute of limitations she is forever debarred from asserting its invalidity.

These matters have thus been indicated because of the emphasis placed upon them in respondent's brief, necessitating a reply in kind from appellant. But into the consideration of them, for the following reasons, we may not and will not enter. Respondent's petition for an allowance for family support made no mention of the articles of separation. It did not disclose their existence. Still less did it disclose a desire upon the part of the petitioner to have them set aside and declared null and void upon the ground of fraud. It is fundamental that fraud is not presumed, and whenever it constitutes an element of a cause of action which is of an affirmative nature or is invoked as conferring a right, it must be alleged. (*Wetherly* v. *Straus,* 93 Cal. 283, [28 Pac. 1045]; *Burriss* v. *Adams,* 96 Cal. 664, [31 Pac. 565]; *Burris* v. *Kennedy,* 108 Cal. 333, [41 Pac. 458]; *Estate of Vance,* 141 Cal.

627, [75 Pac. 323].) If, therefore, petitioner, who at the time she signed her petition had full knowledge of all of these matters, believed that the existence of the articles of separation stood as an obstacle in the way of her receiving a family allowance, and that that obstacle was removable for fraud, she should so have pleaded. Not having so pleaded, the result is that the agreement stood before the trial court unimpeached for fraud, and the rights of the parties were left to be adjudicated in accordance with its legal terms and effect. Thus, if petitioner believed that, notwithstanding the terms of the separation agreement, she was still entitled to the family allowance, this was a position tenable under her pleading, since it called only for a legal construction of the agreement, and under that legal construction she would or would not be entitled to the allowance. This seems to have been the view taken by the judge in probate, who held that nothing in the agreement debarred her from the right to the family allowance.

And, from another point of view, no different result is reached if it be said that the petitioner was not obliged to anticipate a reliance by the administratrix upon the terms of the separation agreement, and that therefore when, in the answer and opposition of the administratrix the agreement was set forth, the petitioner was allowed the implied replication of section 462 of the Code of Civil Procedure. Assuming that under such an implied replication, evidence of fraud might be given, (*Moore* v. *Copp,* 119 Cal. 433, [51 Pac. 630]), it necessarily follows that by the same implication of law there is given to the defendant (in this case the administratrix in opposition) an implied rejoinder, under which she may prove estoppel, a failure to rescind, laches, the statute of limitations or any other matter of defense. But assuming that all these new issues may thus be injected into the case without pleading, nevertheless it follows that before a judgment can be entered under such circumstances and before these matters can be reviewed upon appeal, the court must have made specific findings one way or the other thereon. This the court did not do and so, as has been said, from this point of view, the matters are not open to consideration on this appeal.

There is left then for consideration only the legal questions
which group themselves under these heads: 1. Is the agree-
ment itself legal and binding upon the parties; 2. Does the
agreement itself bar petitioner of a right to a family allow-
ance (a) under its very terms, or. (b) by virtue of the fact
that by conduct under it she ceased to be a member of the
deceased's family; and 3. Has the court in probate jurisdic-
tion to give effect to such an agreement, if it finds it to be
valid?

1. Upon the first proposition, nothwithstanding the confi-
dential relations which exist between husband and wife, it
may not be disputed that such agreements are not against
public policy, and may be entered into and will be enforced
in accordance with their terms when undue advantage has
not been taken of either spouse. We need not go outside of
the decisions of our own state for the complete establishment
of this, though it may be added that the decisions of other
states are in harmony therewith. (*In re Noah,* 73 Cal. 583,
[2 Am. St. Rep. 829, 15 Pac. 287] ; *Wickersham* v. *Comerford,*
96 Cal. 433, [31 Pac. 358] ; *In re Davis,* 106 Cal. 453, [39
Pac. 756] ; *Fealey* v. *Fealey,* 104 Cal. 354, [43 Am. St. Rep.
111, 38 Pac. 49] ; *Estate of Winslow,* 121 Cal. 92, [53 Pac.
362] ; *Hite* v. *Mercantile Trust Co.,* 156 Cal. 765, [106 Pac.
102] ; *Estate of Edelman,* 148 Cal. 233, [113 Am. St. Rep.
231, 82 Pac. 962].) In this case the evidence is undisputed,
as above set forth, that the division of the property was ad-
visedly entered into by Mrs. Yoell, she thoroughly under-
standing the condition of her husband's affairs, the values of
the properties, the incomes which they returned, and having
throughout the negotiations and to their consummation the
advice of her own attorney and counsellor at law. Further,
as has been indicated, it is shown that in numerous, and indeed
in all ways Mrs. Yoell accepted the benefits of the agreement
and that the husband fully performed his part thereof, faith-
fully paying the three hundred and fifty dollars per month
as contemplated. This continued through many years, and
therefore no question can here arise of the fairness of the
transactions between the parties. To the argument of re-
spondent that at the time these articles of agreement were
entered into there were minor children whose rights upon the
estate of their father could not be contracted away by the

mother, the answer is that this is very true, but the question of the limitation of the power of the parties to contract in this regard arises only when it is shown that the rights of minor children are presently involved. At the time of the death of J. Alexander Yoell there were no minor children. A family allowance under our law is given only for the support of the widow or of the widow and minor children or of the minor children. Where there are no minor children, then the family allowance is for the widow alone, and as is said in the well considered case of *Rieger* v. *Schaible*, 81 Neb. 33, [16 Ann. Cas. 700, 17 L. R. A. (N. S.) 866, 115 N. W. 560]. "The rule seems to be that a widow may by appropriate and sweeping provisions of an ante-nuptial contract (and so of course of a post-nuptial contract) waive her right to an allowance when the rights of minor children are not involved." In the present case it is for herself alone that the widow makes application for the allowance.

The separation agreement provided, as a mode of establishing title and separate estate in the undivided moieties of the real property, that deeds by Yoell and his wife should be made to one Buckbee, who in turn should make to the Yoells the deeds contemplated by the agreement. It is said that here was a void trust to convey, rendering the whole agreement void. But to this it must be answered, first, that this was not an executory trust, but an executed one. Buckbee made the deeds, both parties assented to them, received the benefits of them, acted under them, sought the courts to enforce their validity, and so both, upon the simplest principles of equitable estoppel, will be forbidden, while retaining the benefits, to question the validity of the agreement under which they received them. (*Los Angeles* v. *Los Angeles City Bank*, 100 Cal. 24, [34 Pac. 510] ; *Pixley* v. *Western Pac. R. R. Co.*, 33 Cal. 183, [91 Am. Dec. 623] ; *Burris* v. *Adams*, 96 Cal. 668, [31 Pac. 565]. And, finally, upon this point it may be said that the provision for deeds to and from Buckbee was a mere means of carrying into effect the principal purposes of the agreement. It was not an integral nor an essential part of it. The method provided was executed and accepted by both parties, and the whole contract in itself valid will not be permitted to fall because of the supposed invalidity attaching to the

means adopted. (*Estate of Heywood*, 148 Cal. 194, [82 Pac. 755]; *Lauricella* v. *Lauricella*, 161 Cal. 61, [118 Pac. 430].)

This disposes of the imperfections asserted to exist in the agreement itself which respondent insists are of such gravity as to destroy the instrument. We pass, then, to the second consideration.

2. It has been pointed out that the separation agreement made complete disposition of the property of the spouses, dividing it equally between them; that the contemplated separation was a permanent one, and the disposition of the property was designed and declared to be final and complete. A complete release and relinquishment of all rights, present and prospective, is indicated, first, by the general scope and intent of the instrument, and second, by the following language: "the execution of this agreement and the consummation thereof . . . shall be and is intended to be a full, complete and final adjustment of all the property rights of the parties hereto, and that neither party shall or will at any time hereafter make, or attempt to make, any other or further claim than as herein stipulated. That the property stipulated to be conveyed shall be and remain forever the separate property of each of the parties hereto.

"It is further expressly covenanted and agreed that neither party will . . . interfere with the other, their heirs or assigns, in the exercise of the rights of property herein stipulated and agreed to; and that neither of them will, at any time hereafter, assert *any right, interest or title as heirs at law of the other*, to any property devised or bequeathed by such will or as against the estate of the other, should the other die intestate, and *all claim as such heir, or as surviving husband and wife respectively*, and all right to contest or oppose the last will of the other *is hereby expressly waived.*"

Upon the death of the husband the surviving wife may receive a family allowance when and only when she is a member of the family and receiving or entitled to receive support as such member, and when, even though a member of the family, she has not parted with or relinquished her right to make demand for such allowance. (a) To establish such relinquishment of right, no more apt words could be chosen than those deliberately employed in the agreement under consideration. True, it does not in terms and by name relinquish

the right to a family allowance, but it does more than this. The wife covenants that she has renounced and waived all claim which she has or may have as *heir* of the husband or as his *surviving wife*. It is only as heir and surviving wife that she could make her demand for a family allowance, a demand which she has solemnly renounced. In the leading case in this state upon the subject, *In re Noah*, 73 Cal. 583, [2 Am. St. Rep. 829, 15 Pac. 287], under the articles of separation the husband was to pay and did pay to the wife $10,500, the contract providing that the $10,500 should be in full satisfaction of ''all her marital claims,'' etc. This was held to be a relinquishment upon the part of the wife of her right to family allowance. In *Wickersham* v. *Comerford*, 96 Cal. 433, [31 Pac. 358], the wife having received an allotted sum under the agreement of separation, which provided that she ''relinquish all right as his wife in law or equity or by descent and each party shall have hereafter no claim upon the other for support or sustenance,'' it was held that the agreement was binding upon the parties and deprived the wife of the right thereafter to select a homestead out of the husband's separate property either during his life or after his death. In this case *Eproson* v. *Wheat*, 53 Cal. 715, is distinguished, it being pointed out that in the latter case, ''the wife relinquished no right to property and the setting apart to her of a homestead after his (the husband's) death was not in contravention of any express or implied term of the agreement.'' In somewhat different form the question arose in *In re Davis*, 106 Cal. 453, [39 Pac. 756], where the spouses ''relinquish all claims of every nature upon the property of each other then owned or thereafter to be acquired and to immediately separate and live apart from each other during their natural lives,'' the wife stipulating as to certain moneys to be paid her ''that she will receive the same in full satisfaction of all claims she may have as the wife of said W. W. Davis on any property he now has or may in any manner acquire; and hereby does relinquish and surrender forever all claims of any nature she may now or hereafter have against any property that said W. W. Davis may now or may hereafter in any manner acquire.'' The wife applied for letters of administration upon the estate of her husband, the right to such letters depending upon the relative's right to succeed

to the personal estate or some portion thereof. It was held that the articles of agreement worked the disinherison of the wife and she was therefor not entitled to letters, this court saying: "Of course she remains the widow, since the parties could not by their contract change their matrimonial *status;* but it was perfectly competent for them to alter their legal relations as to their property, and this they accomplished. The wife contracted away her inheritable interest in her husband's property, and with that right went the right to administer." In *Estate of Winslow,* 121 Cal. 92, [53 Pac. 362], the agreement provided that it should operate "as a complete settlement and adjustment of all their property rights, relations and affairs." There was property affected by a homestead. The husband paid to the wife one-half of the agreed valuation of this homestead property. The spouses lived apart up to the time of the husband's death. There were no children. The widow petitioned the court that the homestead property should be set aside to her, claiming that the homestead had never been abandoned, and that she was entitled to the same as the survivor of the marital community. The court in probate granted the application, and its order was reversed upon appeal, this court pointing out that it was declared that the agreement should operate as a complete settlement and adjustment of all their property rights, relations, and affairs; that it was executed and that it operated as an abandonment of the homestead. Elsewhere, language not so strong as that contained in this agreement has been held to bar the widow under similar applications. Thus in *Kroell* v. *Kroell,* 219 Ill. 105, [4 Ann. Cas. 801, 76 N. E. 63], by terms of an ante-nuptial contract, each party released, conveyed, and quitclaimed to the other "all interest in the property of the other, both real and personal, renouncing forever all claims, in law and equity, of curtesy, dower, homestead and survivorship." It was contended by counsel for the widow that these terms of the contract did not embrace the widow's award, to which she was therefore entitled on application. But the court said: "The right to a widow's award, under the statute, depends upon marriage, the continuance of the marriage relation until death, and the survivorship of the wife. The contract included all rights acquired by either one of the parties to it who should outlive the other, in the prop-

erty or estate of the other, and clearly embraced the widow's award." In *Appeal of Staub,* 66 Conn. 127, [33 Atl. 615], where the wife in an ante-nuptial agreement received a certain sum "in lieu of dower and all other rights and interests and claims which she would but for the agreement have had in the estate covenanted to receive this money 'in lieu and as full payment for her dower right and of all other claims and interest she otherwise would have had in his estate,'" this language was held to bar her right to the statutory allowance during the settlement of the estate. To the same effect are *Appeal of Cowles,* 74 Conn. 24, [49 Atl. 195]; *Paine* v. *Hollister,* 139 Mass. 144, [29 N. E. 541]; *Tiernan* v. *Binns,* 92 Pa. St. 248; *Buffington* v. *Buffington,* 151 Ind. 200, [51 N. E. 328]; *Young* v. *Hicks,* 92 N. Y. 234; *Johnston* v. *Spicer,* 107 N. Y. 191, [13 N. E. 753]; *Pavlicek* v. *Roessler,* 222 Ill. 83, [78 N. E. 11]; *Brown* v. *Brown's Admr.,* (Ky.), 80 S. W. 470; *In re Deller,* 141 Wis. 255, [25 L. R. A. (N. S.) 751, 124 N. W. 278].

Of the cases in this state which respondent contends support the contrary view, *Eproson* v. *Wheat,* has already been considered and shown not to be in point. In *In re Vance,* 100 Cal. 425, [34 Pac. 1087], no separation agreement was under consideration. The same is true of *In re Bump,* 152 Cal. 274, [92 Pac. 643]. *Warner* v. *Warner,* 144 Cal. 615, [78 Pac. 24], did not involve the consideration of a separation agreement, but of an ante-nuptial agreement by which the wife "does hereby relinquish and disclaim any and all right, claim and interest in and to the property of said first party (the plaintiff) either as heir or otherwise." It was held that a declaration of homestead which the wife placed upon the separate property of the husband was not in violation of the terms of this agreement. Construing it the court said that it was an agreement upon the part of the wife "not to seek to deprive him of any of his property or to assert any claim thereto adverse to him during his lifetime, or any claim of inheritance therein after his death. Her declaration of homestead was not a violation of this obligation thus assumed by her." It is concluded, therefore, that by the very language of the separation agreement the wife renounced, surrendered, and released her right to make application for a family allowance.

(b) The wife, however, was not entitled to succeed in her application, by reason of the fact that she had voluntarily and deliberately severed her relationship as a member of the husband's family. The separation agreement, as we have said, makes plain that such is her intent, while the proved facts of her conduct after the execution of these papers, including the fact, that though in the same city with the husband at the time of his death, she did not even attend his funeral, emphasize the absolute severance of all family ties. (*In re Noah*, 73 Cal. 583, [2 Am. St. Rep. 829, 15 Pac. 287]; *Wickersham* v. *Comerford*, 96 Cal. 433, [31 Pac. 358]; *Estate of Miller*, 158 Cal. 420, [111 Pac. 255].) In *Bose* v. *Bose*, 158 Cal. 428, [111 Pac. 258], it is held that under the statutes pertaining to a homestead and making provision for maintenance and support of the family, setting aside estates of small value, and property exempt from execution, the widow, to take, must come within the definition of the "family," must have been a member thereof "or at least must, without fault of her own, have been entitled to maintenance and support from the husband during his lifetime." This language of course means that she must have been entitled to support as a member of his family. In the case at bar the agreement being valid the widow had voluntarily severed her connection with the family, and her right to support did not rest upon the family relationship at all, but upon the terms of the articles of separation.

3. Finally, respondent contends that the court in probate may not consider the separation agreement; that the widow is entitled to all rights in and to the estate of her husband until, in an action in equity, the court has entered its decree specifically enforcing the contract against the widow. *Bridge* v. *Kedon*, 163 Cal. 493, [126 Pac. 149] is cited as authority in support of this view. The position is not sound, nor is it supported by the case mentioned. Of course, during the lives of the parties a court of equity would be the forum for the enforcement of any violated rights conferred by the agreement. But here the agreement has been fully executed, and one of the parties to it is dead. The other is making unwarranted claims in probate upon the estate of the deceased, and his representative interposes this agreement as a defense by way of estoppel to those claims. That the probate court has

equitable jurisdiction for the purpose of passing upon the validity and effect of such agreements, our cases not only recognize, but declare. *In re Noah,* 73 Cal. 583, [2 Am. St. Rep. 829, 15 Pac. 287], and *Estate of Garcelon,* 104 Cal. 570, [43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414], are typical, while in *Estate of Edelman,* 148 Cal. 233, [113 Am. St. Rep. 231, 82 Pac. 962], discussing the bar of such an agreement, it is said: "While it is true that the law was unable to, and therefore did not, give effect to such transfers, releases, or extinguishments of heirship, it is equally true that they were always cognizable in equity, and that in proper cases they afforded a complete defense by way of estoppel. And this equitable defense by way of estoppel is cognizable by the court in probate."

The order appealed from is therefore reversed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.