[Civ. No. 8436. Second Appellate District, Division One.—September 21, 1932.]

In the Matter of the Estate of WILLIAM F. ANDRES, Deceased. FRANK E. ANDRES, Executor, etc., Appellant, v. MARGARET ANDRES, Respondent.

Harvey M. Parker and Merriam, Rinehart & Merriam for Appellant.

Daniel M. Hunsaker and Lloyd E. Keiser for Respondent.

CONREY, P. J.—Respondent Margaret Andres is the widow of William F. Andres, who died on the twenty-second day of February, 1931, leaving property in the county of Los Angeles now subject to administration under the will

of decedent. Respondent petitioned for an allowance for her support and maintenance, which petition was granted. Contestant, who is executor of the will, and also is an heir at law of decedent, appeals from said order.

■ Respondent and the decedent William F. Andres had lived separate and apart from each other at all times since the year 1905, but never were divorced. Shortly before their separation they entered into an agreement in writing, dated November 17, 1905. In this agreement nothing was said to indicate that the parties intended to live apart from each other. The agreement referred entirely to property and recited that they desired to separate their property interests, "in order that each party may have exclusive control and disposition of all property standing in his or her respective name". Therefore in consideration of the premises and of other good and valuable consideration, and of the sum of $2,350 received by Mrs. Andres "in full satisfaction for this agreement and in full settlement of her community rights now or hereafter acquired by her", she released to her husband, his heirs and assigns forever, "all the right, title and interest, which said party of the first part now has or may hereafter acquire, by operation of law or otherwise, in and to all other property, real, personal and mixed, which said party of the second part now owns or has acquired or which he may hereafter acquire or own, or which may now or hereafter stand in his name, whether the same be community property or otherwise". In similar terms the husband, as party of the second part, in consideration of the agreements therein contained on the part of the party of the first part and of the sum of $1, released all present or future rights in property of the party of the first part, Mrs. Andres.

It is contended by appellant that the said agreement of November 17, 1905, is a complete and final adjustment of all property rights between the spouses, and constitutes a waiver of the respondent's rights to a widow's allowance.

In a very recent case the Supreme Court of California had before it an appeal from an order granting a family allowance to the widow of a decedent, where the objection to the allowance was based upon a claim of waiver by virtue of a contract between husband and wife. The court said: "The sole question presented on the appeal is whether the

petitioner waived her right to ask for a family allowance by reason of the above-quoted provision of the property settlement agreement. It is not disputed that the wife may, by her agreement, waive such rights. It is well established, however, that in order to bar a family allowance the intention to waive the right must be clear and explicit, and that any uncertainty in the language of the agreement will be resolved in favor of the right. (*In re Estate of Whitney*, 171 Cal. 750 [154 Pac. 855]; *In re Estate of Gould*, 181 Cal. 11 [183 Pac. 146].)'' (*In re Bidigare's Estate*, 215 Cal. 28 [8 Pac. (2d) 122].) In that case the agreement between the parties had been that ''each party hereto is hereby released and absolved from any and all obligations and liabilities for the future acts and duties of the other, and that each of the said parties hereby releases the other from any and all liabilities, debts or obligations of any kind or character incurred by the other from and after this date, and from any and all claims and demands, including all claims of either party hereto upon the other for support and maintenance as wife or husband, or otherwise, it being understood that this instrument is intended to settle the rights of the parties hereto in all of said respects''. Applying to said contract the rule as stated in the above-quoted language of the court, it was noted that the agreement did not in terms waive or purport to waive any claim as surviving widow. It was in evidence that only two months before the death of Mr. Bidigare an interlocutory decree of divorce had been granted to the wife. Concerning the contract and its effect upon the right of the widow to an allowance for support during the period of administration of the husband's estate the court said: ''No provision of the contract suggests that the parties had in contemplation the death of the husband before the entering of the final decree of divorce. The release of claims and demands of one against the other would seem to refer to claims and demands between them as living spouses. The claim of the widow here asserted is against the estate of the decedent and not against him. The words 'or otherwise' should not, we think, be held to extend the waiver to a claim for family allowance, but should be held to refer to the claims mentioned in the clause in which they are found, viz., claims between them as husband and wife. These words used in the agree-

ment, instead of being plain and explicit evidence of waiver, tend to the uncertainty which is not permitted to control in cases of this kind.'' *In re Bidigare's Estate, supra,* and *In re Minier's Estate,* 215 Cal. 31 [81 A. L. R. 689, 8 Pac. (2d) 123], were decided on the same day. In the Minier case there was a question of right of inheritance by the widow of the decedent Joseph Minier, where prior to his death a certain agreement of separation had been made between the husband and wife. Among other things the agreement provided that ''from this time on neither of the said parties shall have or claim anything from the other, and each of said parties does hereby release the other in full of all claims and demands of every nature and kind whatsoever, as well in the past as in the present and future and shall be and remain separate from each· other, and in case of any action for divorce being brought by either of said parties against the other, neither of said parties will claim or demand from the other any costs, counsel fees or alimony or any other property, claim or demand of any ˙kind whatsoever''. The decision in this case somewhat extensively reviews the prior decisions in this and other states relating to separation agreements or property division agreements between husband and wife, and the effect of such agreements under circumstances like those of the case at bar. Referring particularly to the Minier agreement the court said: ''That the parties should so carefully and minutely provide against either party claiming any rights from the other in case of divorce proceedings being instituted, and should omit any reference to any claim either should make against the property of the other in the case of the death of either, under the rule of *expressio unius est exclusio alterius,* leads strongly to the inference that they did not intend by their agreement to relinquish or in any way affect their inheritable rights.'' Among the cases thus discussed is the *Estate of Davis,* 106 ·Cal. 453 [39 Pac. 756, 757], concerning which it was pointed out that in the Davis case the release as contained in the agreement attached to the property of the spouses and extended to all property acquired by them during their lifetime or owned by them at the time of death. In that case the release provided that the wife ''hereby does relinquish and surrender forever all claims of any nature she may now or hereafter have against any property that said

W. W. Davis may now have or may hereafter in any manner acquire''. It also recited that she received the property which, pursuant to the agreement, was conveyed to her, ''in full satisfaction of all claims she may have as the wife of said W. W. Davis on any property he now has or may in any manner acquire''. In view of this agreement the Supreme Court said: ''The obvious purpose was not only to definitely sever the property rights of the parties, but mutually to relinquish and release all inheritable interest of each in the property and estate of the other.''

Thus the question is squarely presented whether, in the case at bar, the terms of the contract constituted a release of all future property rights, including inheritable interests, as in the case of *Estate of Davis, supra,* or whether said contract should be construed as reaching no further than did those considered in the Bidigare case and in the Minier case. This brings us back to the terms of the release executed between respondent and the decedent. She released to her husband, his heirs and assigns forever all the right, title and interest ''which said party of the first part now has or may hereafter acquire, by operation of law or otherwise, in and to all other property, real, personal and mixed, which said party of the second part now owns or has acquired or which he may hereafter acquire or own, or which may now or hereafter stand in his name, whether the same be community property or otherwise''.

In order to determine the effect of the contract in relation to the present subject of controversy, consideration must be given to the expressed purposes of the agreement when made, as well as to the circumstances under which it was made. In the contract itself, the purpose for making the agreement was stated to be, ''that each party may have exclusive control and disposition of all property standing in his or her respective name, whether the same be considered community property or otherwise''. In the contract nothing was said about any separation or proposed separation between husband and wife. But, at the hearing in this proceeding, there was evidence pursuant to which the court found that, at the time of the death of William F. Andres, he and Mrs. Andres were living separate and apart without her consent and solely by reason of cruel treatment of her by decedent. And since it appears that they separated

about six months after the making of said agreement, and after such separation never lived together, it is fairly inferable that the alleged cruel treatment occurred at or before the time of the separation.

Under the circumstances above stated, the trial court was justified in determining that, at the time of the death of the husband, respondent herein continued to be a member of the family of decedent and entitled to receive support as such member. In this respect the case is different from that presented in the *Estate of Yoell*, 164 Cal. 540 [129 Pac. 999], wherein it was held that by reason of the fact that the surviving wife had voluntarily and deliberately severed her relationship as a member of the husband's family, she was not entitled to succeed in her application for a family allowance. Another difference may be noted in that in the *Estate of Yoell, supra*, the contract of separation between husband and wife contained an express covenant by which each party surrendered, as against the estate of the other, all claim as surviving husband or wife.

Our conclusion is that, under the contract relied upon by appellant herein, it does not appear that there was any express waiver of the wife's right to support or of her right to a family allowance. There is an absence of any clear and explicit intention of the wife to waive her rights in this respect.

The order is affirmed.

Houser, J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 18, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 17, 1932.