121 Cal.App.2d Supp. 855 (1953)
HUGH B. MORTON et al., Appellants,
v.
THE TRAVELERS INDEMNITY COMPANY (a Corporation), Respondent.
California Court of Appeals. 
Oct. 22, 1953.
 William M. Hawkes for Appellants.
 Luce, Forward, Kunzel & Scripps and R. Sherman Platt for Respondent.
 BURCH, J.
 Plaintiff Hugh B. Morton appeals from a judgment entered after a general demurrer was sustained to his complaint.
 Defendant insurance company issued an automobile liability policy to plaintiff, which included also bodily injury, property damage, and medical payments resulting from an accident involving plaintiff's Chevrolet car.
 As regards "excess" medical payments up to $1,000 limit, resulting from an accident, coverage was afforded assured while operating or occupying another automobile provided the other automobile was not in a class excluded by conditions expressed in the insuring agreement. [121 Cal.App.2d Supp. 857]
 Plaintiff received injuries involving medical payments of $3,104, while operating his wife's Studebaker. The wife's insurer paid $2,000 of these, and plaintiff seeks to recover on his Chevrolet policy the $1,000 limit.
 The court below entered judgment for defendant after a general demurrer was sustained to the complaint. As regards the use of other automobiles, the insuring agreement with its conditions is set out in the complaint as follows:
 "V. Use of Other Automobiles:"
 "If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:"
 "(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured, (2) the spouse of such individual if a resident of the same household and (3) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization. Insuring Agreement III, Definition of Insured, does not apply to this insurance."
 "(b) This insuring agreement does not apply:"
 "(1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse;"
 "(2) to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, chauffeur or servant;"
 "(3) to any accident arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place;"
 "(4) under Coverage B, unless the injury results from the operation of such other automobile by such named insured or spouse or on behalf of either by such chauffeur or servant, or from the occupancy of said automobile by such named insured or spouse." [121 Cal.App.2d Supp. 858]
 Coverage B of the policy reads as follows:
 "I. Coverage B--Medical Payments."
 "To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon, entering or alighting from the automobile if the automobile is being used by the named insured or with his permission."
 The question for decision is whether under these provisions of the policy the insured, who incurred the medical expenses following upon an accident while operating his wife's car, is entitled to insurance coverage.
 These insurance agreements will be found to have been adopted for use in the Standard Automobile Liability Policy as of 1947. (See August, 1950, Supplement to Vol. 1, Insurance Annotations, published by the Committee on Insurance of The American Bar Association.)
 The wording of these insurance agreements was determined upon by representatives of insurers for use in automobile liability policies generally and was not so much formulated as selected for inclusion in plaintiff's insurance contract. [1] There being here no charge of mistake or fraud, the intention of the parties in executing this particular form of written contract must be ascertained from the writing itself as the same is brought before us on this appeal.
 [2] "The terms of the contract are to be understood in their ordinary and popular sense and as a man of average intelligence and experience would understand them." (Burr v. Western States Life Ins. Co., 211 Cal. 568, 575 [296 P. 273].)
 [3] "... each clause is to be considered with reference to every other clause upon which it has any bearing, and all the clauses and provisions are to be construed together as the unified medium whereby the intent of the parties to the instrument is to be reached, ..." (Jones v. Van Nuys, 161 Cal. 158, 165 [118 P. 541].)
 "... each clause of the contract is to be looked to for light in interpreting the others; ..." (Estate of Winslow, 121 Cal. 92, 94 [53 P. 362].)
 [4] "While uncertainties and ambiguities in insurance policies are to be resolved against the insurer, courts must avoid putting a strained and unnatural construction on the terms of a policy and thereby creating an uncertainty or ambiguity. No term of a contract is either uncertain or ambiguous [121 Cal.App.2d Supp. 859] if its meaning can be ascertained by fair inference from other terms thereof." (Burr v. Western States Life Ins. Co., supra, 576.)
 [5] Plaintiff argues that there is ambiguity between V (b) (1) and V (b) (4), which by way of construction vitiates V (b) (1) for the purposes of this case. However, it will be noted V (b) (1) has to do specifically with insurance like that afforded covering the principal automobile--the Chevrolet--when some other automobile is involved. Since assured paid but one premium for coverage on his Chevrolet, it is not unreasonable to expect that similar coverage on other cars would be conditioned to such other cars as were not owned by insured or his household. Such appears to be the clear and unequivocal meaning of V (b) (1). When V (b) (4) is examined in relation to V (b) (1) its clear meaning is that operation or occupancy by the assured or his wife is within the insuring agreement provided that the other automobile occupied or operated (1) be not one owned by assured or member of his household (V (b) (1)); (2) be not in use in business or occupation of the named insured or spouse (V (b) (2)); (3) be not involved in an accident arising out of its operation in connection with repairs or storage of it (V (b) (3)). There is the further condition expressed in V (b) (4) that it pertains only to Coverage B--Medical Payments.
 As we construe these provisions so far as material here, coverage is afforded for medical payments resulting from an accident while occupying or operating a car other than the insured car which is not owned by the insured or a member of his household. Since the car plaintiff was operating at the time of the accident belonged to his wife, who was a member of his household, no coverage is afforded by the policy.
 Coverage B dealing with medical payments is in its nature an accident policy in favor of those persons who incur medical payments for injuries "caused by accident, while in or upon, entering or alighting from the automobile (Chevrolet) if the automobile (Chevrolet) is being used by the named insured or with his permission." It has of itself nothing to do with the use of other automobiles. The reference to it in V (b) (4) affords coverage of like extent and like limitation to other automobiles besides the Chevrolet, but subject to the conditions of Coverage V--Use of Other Automobiles. These conditions we have found to exclude another automobile owned by assured or member of his household. [121 Cal.App.2d Supp. 860]
 The decisions of other jurisdictions which have been brought to our attention that have considered the language contained in Coverage B, Medical Payments, in the present policy, have involved injuries from accidents in which the principal automobile was involved. The Louisiana court in Sims v. National Casualty Co., (La.App.) 43 So.2d 26, considered the insurance in the nature of an accident policy and suggests in the opinion that the assured was not covered for his personal medical payments. An Ohio court in Madden v. Farm Bureau Mutual Auto. Ins. Co., 82 Ohio App. 111 [79 N.E.2d 586], granted judgment to the assured without mention of whether he was in the class insured by the clause. In neither case were the insurance agreements for the use of other automobiles involved. Hence there was no consideration of the relation of the two insuring agreements to each other. The general rule is stated in Appleman's Insurance Law and Practice, vol. 8, section 3961, as follows: "Only those vehicles with reference to which insurance is obtained are within the protection of the policy and no liability attaches to the insurer for harm done by any others." The language used here under the insuring agreement V, Use of Other Vehicles, appropriately distinguishes this policy from the general rule but without the latter insurance agreement, that is the use of other automobiles, no doubt the general rule would have applied here. It appears that the application of the general rule to Coverage B gives clarity and certainty to the provisions of the insurance agreement V, Use of Other Automobiles, and that insured's personal medical payments resulting from an accident while insured was operating his wife's Studebaker are not covered in the policy.
 On these considerations the judgment is affirmed.
 Turrentine, P. J., and Glen, J., concurred.