[Civ. No. 12605–S.   Second Appellate District, Division One.—May 17, 1940.]

In the Matter of the Estate of ABRAHAM SHAPERO, Deceased.   JACK SLOTNIKOW, Executor, etc., Appellant, v. MINNIE SHAPERO, Respondent.

Harry Sherr and James B. Fredericks for Appellant.

Edward Linder for Respondent.

YORK, P. J.—On January 21, 1939, decedent and respondent entered into an antenuptial agreement by the terms of which it was agreed that "as an integral part hereof, and in consideration of all mutual covenants contained herein, that both parties hereby release each other, waive and relinquish all rights, interest or claims against the other for any alimony, attorney's fees or costs in connection with any possible litigation there may be between them and arising out of, or in connection with their domestic relations, or otherwise, which may happen between them at any time during their married life, including also all rights of inheriting, administration, homestead or otherwise, whatever. . . . "

In compliance with certain terms of said agreement, decedent on March 27, 1939, executed his last will in which be bequeathed to respondent wife the sum of $500 to be paid to her in due course of administration of his estate, and also requested that she be permitted to occupy the family home during her natural life and while she remained his widow, "without rental charges whatever." All the residue and remainder of his estate he devised and bequeathed to his friend, Jack Slotnikow, appellant herein, who was named as executor.

Decedent died on June 2, 1939, his will was duly admitted to probate, and in course of administration respondent petitioned for a widow's allowance of $150 per month, alleging to be without means of support or maintenance. Appellant filed his objections to such allowance on the ground that respondent by the antenuptial agreement, hereinbefore referred to, had waived and relinquished all claims in decedent's estate, including the right to a family allowance.

From the order of the trial court granting an allowance to the widow in the sum of $75 per month from the date of decedent's death, this appeal is presented by appellant executor and residuary legatee under the will.

The question to be determined is whether the widow by the terms of the antenuptial agreement waived her right to a family allowance.

"The right of a widow to a family allowance is a personal privilege and she can relinquish it when there are no children (*Estate of Yoell,* 164 Cal. 540 [129 Pac. 999]; *Estate of Noah,* 5 Cof. Prob. Dec. 277, affirmed in 73 Cal. 583 [15 Pac. 287, 2 Am. St. Rep. 829] and 88 Cal. 468 [26 Pac. 361]); . . . or she may waive and release it in advance by an antenuptial agreement (*Estate of Yoell, supra*), or by a separation agreement (*Estate of Bidigare,* 215 Cal. 28 [8 Pac. (2d) 122]; *Wickersham* v. *Comerford,* 96 Cal. 433 [31 Pac. 358]), but such a waiver must be certain and intended (*Estate of Bidigare, supra*). . . . Whether the right to demand an allowance has been surrendered is a question of interpretation of the contract or decree set up as a bar to the right. In either case the right should not be held to have been surrendered, except by clear and explicit language. (*Estate of Bidigare, supra; Estate of Gould,* 181 Cal. 11 [183 Pac. 146]; *Estate of Whitney,* 171 Cal. 750 [154 Pac. 855]; *Estate of Myers,* 115 Cal. App. 443 [1 Pac. (2d) 1013].)'' (11A Cal. Jur. 521 et seq.)

In *Estate of Myers,* 115 Cal. App. 443, 444 [1 Pac. (2d) 1013], by an antenuptial agreement the parties thereto agreed to waive "all and every right whatsoever which he or she might have or acquire by law by such marriage in any and all property of every kind and character, real, personal or mixed, now owned or which may hereafter be acquired by the other party, it being understood and agreed that all of the property and property rights which each of these parties now has, or which each may hereafter acquire, shall pass to her or his heirs at law, devisees or legatees in precisely the same manner and with the same effect as though no marriage were ever consummated."

In the Myers case, the parties, as here, lived together until the death of the husband, he supporting her up to that time and under his will granting her a life estate in the home in which they had lived. In upholding the right of the widow to a family allowance, the court in the cited case quoted from the *Estate of Woodburn,* 212 Cal. 683 [300 Pac. 22], as follows: "In that case an antenuptial agreement was executed by the intending spouses in contemplation of their marriage,

and they undertook 'to make a full and complete settlement of their property rights prior to said marriage' and both agreed that 'in consideration of the marriage contract above referred to', each party 'does hereby expressly waive and relinquish any and all right, title and interest in and to any property either real or personal now owned or that may be hereafter acquired by' said parties which they 'might be entitled to by reason of being the husband' or wife of the other party to the agreement. In connection with the wife's agreement, however, it was provided that the husband should furnish her for 'as long as she may live a good and comfortable home, . . . and it is agreed that said property may be held as a home for' her 'so long as she may live.' . . . In affirming the order granting her petition our Supreme Court said:

" 'Upon the merits of this appeal we are of the opinion that the antenuptial settlement entered into between' deceased 'and the lady who was to become his wife and widow and who is the respondent herein, while the parties thereto expressly waived and relinquished each on his and her own part all right, title and interest in the property then owned or thereafter to be acquired by the other party, and all right of inheritance therein to which either party might be entitled as the husband or wife of the other, cannot be held to have accomplished a waiver of those rights to which the widow or minor children, if any, of a decedent are entitled under the provisions of article I, chapter V, part III, title XI of the Code of Civil Procedure. The provisions of said chapter and article expressly relate to the support of the family of a decedent, and to which the widow and minor children of said decedent become entitled upon his death and the probate of his estate, without regard to any interest which they or any of them may have had in the property of said decedent during his lifetime, and without reference to their heirship or right of inheritance therein. The rights to which this widow became entitled under the foregoing provisions of the code were in no sense either the rights of inheritance or rights depending upon any previous interest in the property of the decedent owned by him during his lifetime and which she may have surrendered by virtue of the terms of their antenuptial agreement.' "

■ In both of these cases the antenuptial agreements were at least as broad as the one presented in the instant case; no children were involved, and in each the husband provided a home for the widow for her lifetime.

In the instant case, the will of the husband gave the wife the sum of $500 to be paid during course of administration and also asked that she be permitted to occupy rent-free the family home for the term of her natural life. In view of the announced desire of the husband that the wife should have a home, as well as the cash bequest, it would appear unjust to deprive her of the right to a family allowance, in the absence of a clear and explicit waiver, or a direct relinquishment thereof in the antenuptial agreement.

The order appealed from is therefore affirmed.

White, J., concurred.

DORAN, J., Dissenting.—I dissent. The sole question involved is one of construction. It may be conceded that the doctrine relied upon in the prevailing opinion is properly applied to the facts in the decisions cited, but the phraseology of the agreement presented for construction in connection with the appeal herein, clearly contains and contemplates what the agreements in the cited cases lacked. That is to say, the phrase "including also *all* rights of . . . *administration*", is clearly intended by the parties to deny to the widow the right to a family allowance. (Italics added.) Section 680 of the Probate Code provides that the widow is entitled to allowance during the progress of the settlement of the estate; thus the right to such allowance is a right of administration. What else could have been intended by the parties? There is nothing ambiguous, uncertain or doubtful about the meaning of the quoted words, and under elementary rules of construction it is the court's plain duty to give to them full effect. In my judgment they are clear and explicit, within the application of the doctrine enunciated in the decisions upon which the prevailing opinion is based.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 16, 1940. Edmonds, J., voted for a hearing.