[Civ. No. 15668. Second Dist., Div. One. Apr. 22, 1947.]

Estate of LOUIS SCHWARTZ, Deceased. MINNIE K. SCHWARTZ, Appellant, v. DAVID SCHWARTZ, Respondent.

Baker & Kelleher for Appellant.

Isadore Gralla and Joe Wapner for Respondent.

WHITE, J.—This is a companion case to that of *Estate of Schwartz,* this day decided (*ante,* p. 301 [179 P.2d 863]).

Minnie K. Schwartz, widow of decedent, appeals from an order denying her petition for a family allowance, such denial being based on the ground that by the terms of an antenuptial agreement she had waived her right to such allowance.

Section 680 of the Probate Code expressly relates to the support of the family of the decedent to which the widow and minor children become entitled upon his death and the probate of his will, irrespective of the interest which they or any of them may have had in the property of said decedent during his lifetime, and without regard to their heirship or right of inheritance therein. However, it is now settled law in this state that although under section 680 no more is required of one who petitions for a family allowance than that she be the testator's widow, nevertheless, it is not in every case where an applicant establishes that she is the decedent's widow that the section gives her an absolute statutory right to such an allowance. "An applicant may have waived her right to an allowance by an agreement to that effect . . . or may have lost that right by her conduct." (*Estate of Brooks,* 28 Cal.2d 748, 750 [171 P.2d 724].)

In the instant case there is no contention that the widow lost her right to a family allowance by reason of her conduct. She was residing with the testator at the time of his death and as his wife was receiving maintenance and support from him.

A review of the cases involving antenuptial and separation agreements wherein it was urged that the widow had waived her right to a family allowance or a probate homestead, impresses us that each particular case must be determined in the light of all the surrounding circumstances as disclosed by the record and the language used in the particular agreement under consideration. ▇ We think it fair to say that in a case such as the one now before us, where the spouses had lived together until the husband's death under conditions that made him liable for her support until that time, the right should not be held to have been surrendered by an agreement between the spouses, "except by clear and explicit language." (*Estate of Whitney,* 171 Cal. 750, 756 [154 P. 855].)

▇ We are therefore confronted with the question of whether, in the agreement made by appellant wife, the words were such as to clearly import an intention to surrender the

very right she afterwards claimed. In determining that question we are not particularly aided by decisions on the interpretation of instruments embodying different language than that contained in the document before us. Our interpretation must be made by viewing the particular agreement itself and from a study of the particular terms employed therein, read in the light of the underlying purpose of the transaction and the circumstances under which it was made, as reflected by the record.

In the case at bar, the due execution and validity of the antenuptial agreement is conceded. The husband appears therein as party of the first part and respondent widow as party of the second part. After reciting that a marriage was contemplated between the parties, the agreement provides as follows:

"And whereas, the parties hereto desire to make a fair and reasonable provision for party of the second part, *in lieu of the rights, which after the consummation of said marriage, said party of the second part might or could have, as wife, or widow, or otherwise in said real and personal property which said party of the first part now has, or may hereafter own;*

"Now, therefore, it is hereby mutually agreed as follows: (1) That said party of the second part shall receive and accept from the estate of party of the first part, after his death, if she shall survive such party of the first part as his widow, the sum of Five Thousand ($5,000.00) Dollars *in place and instead of all rights, which, as widow of party of the first part, she might otherwise have, either as a homestead community interest or otherwise or as a distributive share of the estate, by operation of law,* under present or future laws of the State, to be enacted, or in force and effect now or hereafter; . . . ." (Emphasis added.)

Viewed in the light of the rules hereinbefore enunciated, we are persuaded that it must be held in the instant case that by the antenuptial agreement appellant intended to and did waive her right to a family allowance. The wording of the contract makes it clear that appellant and decedent intended to settle, for a consideration of $5,000 paid to the former, "all rights, which, as widow of party of the first part, she might otherwise have." The language of the court in *Estate of Yoell,* 164 Cal. 540, 550 [129 P. 999], which involved the question of whether a widow had waived her right to a family

allowance, is cogently applicable to the cause now before us: "To establish such relinquishment of right, no more apt words could be chosen than those deliberately employed in the agreement under consideration. True, it does not in terms and by name relinquish the right to a family allowance, but it does more than this. *The wife covenants that she has renounced and waived all claims which she has or may have as heir of the husband or as his surviving wife. It is only as heir and surviving wife that she could make her demand for a family allowance, a demand which she has solemnly renounced.*" (Emphasis added.) (See, also, *Estate of McCoy*, 51 Cal.App.2d 483 [125 P.2d 71].)

Application of the "clear and explicit language" test to the wording of the agreement with which we are here concerned convinces us that appellant thereby surrendered her right to a family allowance.

It will be of little interest or value to analyze the authorities cited by appellant and respondent touching other contracts somewhat similar to this one which have been considered by the courts. As heretofore pointed out, each agreement must be interpreted with reference to its own peculiar language, read in the light of the surrounding circumstances. This agreement we have attempted to so interpret, and in so doing we cannot find in the authorities cited any reason to adopt an interpretation other than the one adopted by the court below.

For the foregoing reasons, the order appealed from is affirmed.

York, P. J., and Doran, J., concurred.