[Civ. No. 5322.   Fourth Dist.   May 9, 1956.]

Estate of BESSIE B. HAWKINS, Deceased.   WALTER W. BAXLEY, as Executor, etc., et al., Appellants, v. GEORGE C. HAWKINS, Respondent.

Baker, Palmer, Wall & Raymond and H. E. McCombie for Appellants.

William R. Hulsy for Respondent.

BARNARD, P. J.—Bessie B. Hawkins, formerly Bessie B. Stevens, died on October 12, 1954. She was survived by her husband, George C. Hawkins, whom she married in March, 1951. Aside from $62.92 in cash, her sole estate consisted of a city lot improved with a two-story dwelling and a duplex apartment over the garage, and some household furniture. By her will she disinherited her husband and gave all of her estate to her minor granddaughter, Lynda Floy Stevens.

The will was admitted to probate on November 1, 1954, and letters testamentary were issued to Walter W. Baxley. The estate was appraised at $10,912.02, including $500 for the furniture. The only other income received from the estate was $34.10, and notice to creditors was duly published. Notice of intention to sell the real property and the household furniture, subject to confirmation by the court, was duly published and given commencing on November 5, 1954.

On December 15, 1954, George C. Hawkins filed a petition for a family allowance. In a supporting affidavit he alleged that he had aided the deceased in operating the property as a rooming house; and that in an attempt to aid in the settlement of the estate "and to aid in the attempted sale of the real property" he had vacated the premises. The executor filed objections alleging that the husband was able to support himself if he would remain sober; that no funds were available with which to pay a family allowance; that the executor had offered the property for sale; and that no bids had yet been received. After a hearing, at which the husband testified, "I am not drunk most of the time," an order was made on February 4, 1955, granting the husband an allowance of $75 a month payable when funds became available, it being further ordered that said amounts be paid to him through the office of his attorney "to be disbursed for lodging and food."

On April 1, 1955, the executor filed his return of sale and petition for order confirming sale, alleging that on March 28 he sold the real property together with the household furniture to Mr. and Mrs. Fogal for $11,000, payable $2,500 in cash and the balance in monthly installments of $90 to be secured by a note and trust deed, which were attached; that $1,500 was deposited with the bid; and that he had employed

a named real estate broker who found the buyer. The petition also contained the usual allegations as to the required facts, and prayed that the sale be confirmed, that upon the receipt of the balance of the down payment and the note and trust deed the executor be directed to convey the property to the Fogals, and that he be authorized to pay this broker a commission of $550. The clerk set the matter for hearing on April 18, 1955, and filed an affidavit of posting notice thereof. The matter was continued to May 2, 1955, at 10 a. m. for hearing and written notice thereof was given to Hawkins and his attorney.

On May 2, 1955, at 9:31 a. m., Hawkins filed a petition for an order setting aside the real property to him as a probate homestead, alleging that he was the surviving spouse, that no homestead had been selected during the lifetime of the decedent, and that he was residing on the property at the time of her death and had voluntarily vacated the premises at the request of the executor. The return of sale and petition for confirmation was heard at 10 a. m. on May 2, 1955, counsel for both parties being present. A minute order was entered on that day, and an order signed by the judge was entered on May 3, finding all of the required facts, and further finding that no objections had been made or opposition filed. It was ordered that the sale be confirmed, that the executor convey the property to the Fogals, upon receipt of the down payment with a note and trust deed for the balance, and that the executor pay the real estate broker $550 as a commission for finding the buyers. It appears that the down payment was paid, a conveyance to the buyers was executed and recorded, and a note and trust deed securing the balance was received by the executor.

On May 19, 1955, Hawkins filed an affidavit alleging that he selects this real property as a homestead during his lifetime; that his petition for an order setting aside the probate homestead was filed prior to the hearing of the executor's petition for confirmation of sale; that the order confirming sale made on May 3, 1955, takes all of the real estate out of said estate and makes the granting of a probate homestead impossible; and that he has not waived his right to a probate homestead and is informed and believes that he has a statutory right thereto. The affidavit then prays for an order vacating the order confirming sale of real property entered on May 3, 1955. On the same day, the court issued an order requiring the executor to show cause on May 31 why its order

confirming sale of real property should not be vacated. The executor filed an affidavit in opposition thereto alleging, among other things, that the property had been sold on March 28 in order to pay the family allowance, the funeral expenses, the expense of administration, and claims against the estate; that the sale had been confirmed; that in order to give the buyers a clear title the executor had paid from the monies received from the Fogals $522.79 for taxes and to redeem the property from a tax sale; that it was also necessary to pay $169 to release a chattel mortgage which had been signed by Hawkins; and that various claims as well as cost of administration remained to be paid.

The motion for an order vacating and setting aside the order confirming sale of the real property was finally heard on June 14, 1955, and on June 29 the court entered an order reciting merely that "the order heretofore made, confirming the sale of real property is hereby vacated." On July 1, a written order to the same effect was entered. There is no record of the oral proceedings at that hearing. However at the hearing of Hawkins' petition for probate homestead held on July 14, 1955, counsel for both parties agreed that the only reason "why the order of confirmation of sale was vacated was to give Hawkins an opportunity to have his petition for probate homestead heard."

The petition of Hawkins that the property be set aside to him as a probate homestead was set for hearing on May 16, 1955, but was continued and heard on July 14, 1955. At that time the court had before it objections filed by the executor alleging that at all times after November 5, 1954, Hawkins and his attorney knew that the executor intended to sell this property and knew that it would be impossible to pay a family allowance unless the property was sold; that the petition for a probate homestead was not filed until the day the sale was confirmed; that a certified copy of the order confirming sale was recorded; that, thereafter, in good faith the buyers had complied with the terms of the order and the executor had conveyed the property to them; that in order to complete the sale of the property the executor had used $1,009.27 of the money received from the buyers to pay off liens against the property and the family allowance; and that the buyers had subsequently expended over $2,000 in repairing the property. It also appeared that Hawkins had received $300 on his family allowance which came from the money paid by the buyers. No evidence was brought out

at the hearing on July 14, but counsel for both parties were present. After argument, the court stated that the right to a probate homestead was an absolute one, and that the objections made did not constitute a valid ground for not granting the petition. An order was entered on July 18, 1955, ordering that this real property be set aside to Hawkins for his exclusive use and benefit for a period of six months, with permission to him to then file a petition for an extension of said probate homestead.

The executor has appealed from the order vacating the order confirming sale; and the executor, Mr. and Mrs. Fogal, and the guardian of the estate of Lynda Floy Stevens, a minor, have appealed from the order setting apart a probate homestead.

It is first contended that the court erred in vacating the order confirming sale of the real property. It is argued that this order was based upon findings of all necessary jurisdictional facts, that it was reviewable only on appeal or in some manner authorized by statute, and that under the showing here made the court had no authority to set this order aside. In this connection, it is pointed out that the buyers of the property were not given notice of the application for an order vacating the order of confirmation.

The respondent does not attack any of the proceedings leading up to the order confirming the sale, but contends that the court erred in entering that order since a petition for probate homestead had been filed just prior to the hearing. It is argued that the court may have inadvertently concluded that no objections had been made or opposition filed, since a petition for probate homestead was pending; and that it was error to confirm the sale, since such an order removed from the estate the only property available for a probate homestead. It is further argued that the court did not err in entering the order vacating the order of sale, since the court could have based that order either on the provisions of section 473, or on section 663 or 663a of the Code of Civil Procedure. Finally, it is argued that the court may well have determined that it had erred in making its order confirming the sale, which error was apparent from an examination of the judgment roll, and that it is now established that courts have authority to correct their judgments for errors ''which are clerical or judicial in nature,'' citing

*Estate of Remick*, 75 Cal.App.2d 24 [170 P.2d 96] and *Livesay* v. *Deibert*, 3 Cal.App.2d 140 [39 P.2d 466].

It does not appear that the buyers of this property were notified of the hearing on the motion to vacate the prior order confirming the sale, or that they were present or represented by counsel at that hearing. The order confirming sale had been made after notice and with no objections filed. There was no sufficient showing under section 473 of the Code of Civil Procedure, since there was no showing that the order had been made because of any surprise or excusable neglect. Sections 663 and 663a of that code were not applicable as the requirements of those sections for the giving of notice, and the facts to be stated, were not complied with. The mere fact that a petition for the setting aside of a probate homestead had been filed was not enough. If, as claimed, that fact was brought to the attention of the court, the court did not consider it as controlling, and acted on the return of sale. The court had not yet acquired jurisdiction in that regard, since notice had not been posted as required by law. (*Stiebel* v. *Roberts*, 42 Cal.App.2d 434, at 438 [109 P.2d 22].) There was no showing and there is nothing to indicate that the order confirming sale was not the one intended by the court at that time, and there is nothing to indicate any clerical or ministerial mistake, or that the order vacating the prior order was made for any such reason. In fact, it was conceded at the hearing on July 14 that the "only" reason that order was made was to permit the application for a homestead to be heard. A conveyance of the property had been made in accordance with the court's direction in the order confirming sale, and section 786 of the Probate Code provides that such a conveyance conveys to the buyer all rights in the property which the decedent owned at the time of death. It also clearly appeared that the buyers of the property had paid a large sum of money pursuant to the order of confirmation and a large part of this money had already been expended in clearing the title to the property, and that the respondent had received $300 of that money to apply on his family allowance. It has been held in the cases cited by the respondent, and in many other cases, that a trial court may not revoke or otherwise disturb its judgments or orders except in the method particularly prescribed by some statute. (*United Railroads* v. *Superior Court*, 170 Cal. 755 [151 P. 129, Ann.Cas. 1916E 199].) In *Estate of Estrem*, 16 Cal.2d 563 [107 P.2d 36], the court said:

"The jurisdiction of the court to render a judgment or order often depends upon the preliminary determination of certain jurisdictional facts. When all parties affected are actually or constructively before it with an opportunity to assert their contentions and to appeal from an adverse ruling, the finding of such facts by the court may be reviewed only by an appeal or other timely and available direct attack. This finding cannot be attacked in a proceeding under paragraph 4 of section 473 to have the judgment declared void, nor can it be attacked in any collateral proceeding. In such situations the finding is as conclusive as any other finding of fact by the court in the original proceeding."

In *Crane* v. *Superior Court*, 42 Cal.App. 285 [183 P. 606], it is said:

"No fact appeared in the record from which inadvertence of the court may be inferred. The order itself, now under review, while it states that the decree of discharge was made inadvertently and *ex parte*, does not indicate any particular in which the court had acted improvidently or inadvertently."

The order with which we are here concerned does not even purport to say that the prior order was entered inadvertently, or through any surprise or mistake. No reason for vacating the prior order appears anywhere in this record, other than the admitted fact that it was made for the sole purpose of giving the respondent an opportunity to have his petition for a probate homestead heard. If it be assumed, as respondent argues, that the court erred in confirming the sale, this was an error in a judicial decision actually made and not a clerical error in entering a wrong or incomplete order. Being a judicial act the court was without authority to vacate that order under the circumstances or for the reasons which here appear. (*Stevens* v. *Superior Court*, 7 Cal.2d 110 [59 P.2d 988].)

The appellants further contend that where an order for family allowance has been made which cannot be paid until the property is sold, and where a sale has been properly made and the return of sale is ready for hearing, a petition for probate homestead filed at the last minute cannot cut off the right of the purchasers to a confirmation of the sale; and that by his conduct the respondent waived any right he may have had to a probate homestead. ▉ It is well settled that the right to a probate homestead, as well to the right of a family allowance, is not absolute under all circumstances

and that such a right may be waived or may be lost by the acts and conduct of the applicant. The respondent knew that an attempt was being made to sell the property when his order for family allowance was made, and knew that this allowance could not be paid until and unless the property was sold. At the hearing of his application for a family allowance it appeared without conflict that the property was then vacant, that it needed repair, that there was no money in the estate to do that, and that it was not economically feasible to rent it or to hire someone to operate it as a rooming house. The court recognized this, stated that there were no funds out of which the family allowance could be paid, and asked when the property would be sold. He then made his order providing that the amounts allowed should be payable when the funds were available.

In asking for a family allowance the respondent represented to the court that, for the purpose of aiding and settling the estate and "to aid in the attempted sale of the real property," he had vacated the premises. After getting that order, and with knowledge that the property was to be sold, he waited for another three months including a full month after the return of sale was made. After rights of the bidders had thus accrued, and only a few minutes before a hearing on the return of sale was held, he filed a petition for a probate homestead, proper notice of which was not and could not be given before the other hearing. He then accepted $300 on his family allowance, which came and had to come from the buyers' money. A conveyance of the property was made to the buyers pursuant to the court's order, some of the buyers' money was used in clearing the title to the property, and the buyers had expended large sums in reliance on the order. Under the circumstances shown by the record it must be held that the respondent lost his right to claim probate homestead by his acts and conduct, including his implied consent to the sale of the property. (*Estate of Brooks,* 28 Cal.2d 748 [171 P.2d 724]; *Soares* v. *Steidtmann,* 130 Cal.App.2d 401 [278 P.2d 953].)

In view of the foregoing, it is unnecessary to consider appellant's further contentions that under the wording of section 661 of the Probate Code the respondent was not entitled to claim a probate homestead, since there were no minor children; and that he was not entitled to a probate homestead because the evidence shows that he was not de-

pendent upon the decedent for support at the time of her death.

The respondent contends that if the court erred in vacating the order confirming the sale such error is not reversible since section 4½ of article VI of the Constitution forbids a reversal unless a miscarriage of justice appears. It is argued that since an order setting aside a probate homestead was mandatory under the provisions of section 661 of the Probate Code, the order vacating the order of confirmation merely cleared the way for a hearing on the petition for a homestead, and no miscarriage of justice appears. The order confirming the sale was regularly made in the absence of objection thereto; in accordance therewith a conveyance was made to the buyers who paid the required amount; and some of their money was used in paying off liens and in paying the family allowance to the respondent. The setting aside of this order necessarily worked an injustice as to the executor and the estate. Moreover, the rights of the buyers and of the real estate broker, who had no notice of that proposed action, were completely ignored. We are far from convinced that no miscarriage of justice appears.

The orders appealed from are reversed.

Griffin, J., and Mussell, J., concurred.