[Civ. No. 5986.   Fourth Dist.   July 28, 1959.]

Estate of LEO BRISACHER, Deceased. WILLIAM BRISACHER, Appellant, v. ETHEL BRISACHER, Respondent.

*Assigned by Chairman of Judicial Council.

Irmas & Rutter and Elizabeth M. Horowitz for Appellant.

Thompson & Colegate and F. Gillar Boyd, Jr., for Respondent.

MUSSELL, Acting P. J.—Ethel Brisacher, petitioner herein, is the widow of Leo Brisacher, who died on March 17, 1958. On April 7, 1958, petitioner filed in the Superior Court of Riverside County a petition for a family allowance. Opposition to the petition was filed by William Brisacher, son of the decedent, in which he alleged that the petitioner and the decedent

entered into an antenuptial agreement, dated April 14, 1947, in which it was stated that

"It is understood that either of us may by will either heretofore or hereafter made, dispose of our entire separate property to such persons and in such manner as we may choose, and that the survivor of us shall not have a claim against the estate of the other unless some devise or bequest is left by the decedent to the survivor."

It was further alleged that said agreement was in full force and effect, and the prayer was that the petition for family allowance be denied.

On June 12, 1958, the trial court entered the following order:

"Proceedings: (1) Court finds as a matter of law that even though in full force and effect the antenuptial agreement would not preclude the widow from receiving a family allowance. Petition for family allowance is hereby granted to the extent of $350.00 per month."

On June 30, 1958, there was filed by Ethel Brisacher a supplemental petition for family allowance, reciting, among other matters, that on June 16, 1955, the decedent created a trust to take effect upon his death, and under its terms petitioner was to be paid $500 per month for life thereafter; that when petitioner filed her first petition for family allowance she had not received any income from said trust; that on June 19, 1958, she received three monthly payments thereon and was advised that she would receive the monthly payments thereafter; that she therefore requested the court to reduce the family allowance to $250 per month. The court granted this petition and thereafter the contestor, William Brisacher, appealed from the order as amended.

There is no reporter's transcript of the proceedings in which the superior court made the allowance and the appeal is presented on the clerk's transcript, plus a stipulation that the antenuptial agreement involved is as set forth in appellant's opening brief and may be considered by the court in lieu of the original. The agreement is as follows:

"April 14, 1947.

"Dear Leo,

"We have certain mutual problems in view of the fact we intend to be married concerning our respective properties and assets. It is understood that we both have certain assets which we have heretofore received and which are at present our own separate property. It is our purpose that our said

property shall remain our separate property, and it is our purpose to also agree with respect to the distribution and division thereof in the event of death or in the event of other unforeseen difficulty or disagreement. We have therefore agreed as follows:

" (1) It is specifically understood that we shall each retain as our own separate property at all times all property and assets which we have heretofore acquired.

" (2) It is understood that either of us may by will either heretofore or hereafter made, dispose of our entire separate property to such persons and in such manner as we may choose, and that the survivor of us shall not have a claim against the estate of the other unless some devise or bequest is left by the decedent to the survivor.

" (3) In the event unfortunate circumstances shall arise by reason of which we shall become separated or divorced it is specifically understood that under such circumstances we shall each retain as our own separate property any and all assets herein described as separate property, and that neither of us shall have or hold a claim against the other with respect to finance or for support or otherwise.

" (4) If any part or portion of this memorandum shall be held invalid or unenforceable, such invalidity shall not affect the remaining provisions hereof. It is our intention to, in this informal manner, finally settle and determine all matters herein referred to.

"If the foregoing meets with your understanding, please indicate your acceptance and agreement to each of the provisions above stated by signing in the space hereinbelow provided, it being understood that this Agreement shall continue to apply during and through our respective lifetimes.

(Signed) Ethel Earhart.

"I do hereby agree to and accept the foregoing conditions.

(Signed) Leo Brisacher."

The principal question presented on this appeal is whether the antenuptial agreement by its terms precludes the granting of a family allowance to the widow, Ethel Brisacher.

■■ Family allowances are strongly favored in the law (*Estate of Jacobs*, 61 Cal.App.2d 152, 155 [142 P.2d 454]) and it is also well established that an applicant may have waived her right to an allowance by an agreement to that effect (*Estate of Brooks*, 28 Cal.2d 748, 750 [171 P.2d 724]).

■ In order to bar a family allowance the intention to waive the right must be clear and explicit, and any uncertainty in the language of the agreement will be resolved in favor of the right. (*Estate of Bidigare*, 215 Cal. 28, 30 [8 P.2d 123].)

In *Estate of Yoell*, 164 Cal. 540 [129 P. 999], the widow petitioned for a family allowance and as a ground of opposition thereto the special administratrix set up a postnuptial agreement between the decedent and his wife wherein the parties agreed to a division of their community property; that the execution of the agreement and the delivery of the various instruments involved was intended to be a full, complete and final adjustment of all the property rights of the parties thereto and that neither party thereto would at any time thereafter make or attempt to make any other or further claim than as therein stipulated. The agreement further provided:

"It is further expressly covenanted and agreed that neither party will . . . interfere with the other, their heirs or assigns, in the exercise of the rights of property herein stipulated and agreed to; and that neither of them will, at any time hereafter, assert any right, interest or title as heirs at law of the other, to any property devised or bequeathed by such will or as against the estate of the other, should the other die intestate, and all claim as such heir, or as surviving husband and wife respectively, and all right to contest or oppose the last will of the other is hereby expressly waived."

The court there held that

"Upon the death of the husband the surviving wife may receive a family allowance when and only when she is a member of the family and receiving or entitled to receive support as such member, and when, even though a member of the family, she has not parted with or relinquished her right to make demand for such allowance. (a) To establish such relinquishment of right, no more apt words could be chosen than those deliberately employed in the agreement under consideration. True, it does not in terms and by name relinquish the right to a family allowance, but it does more than this. The wife covenants that she has renounced and waived all claim which she has or may have as *heir* of the husband or as his *surviving wife*. It is only as heir and surviving wife that she could make her demand for a family allowance, a demand which she has solemnly renounced."

While this case was decided in 1913, it has been cited many times in subsequent decisions dealing with the question of

waiver of family allowances and apparently, it has not been overruled.

In *Estate of Schwartz*, 79 Cal.App.2d 308, 310 [179 P.2d 868], the antenuptial agreement involved provided as follows:

"And whereas, the parties hereto desire to make a fair and reasonable provision for party of the second part, in lieu of the rights, which after the consummation of said marriage, said party of the second part might or could have, as wife, or widow, or otherwise in said real and personal property which said party of the first part now has, or may hereafter own;

"Now, therefore, it is hereby mutually agreed as follows: (1) That said party of the second part shall receive and accept from the estate of party of the first part, after his death, if she shall survive such party of the first part as his widow, the sum of Five Thousand ($5,000.00) Dollars in place and instead of all rights, which, as widow of party of the first part, she might otherwise have, either as a homestead community interest or otherwise or as a distributive share of the estate, by operation of law, under present or future laws of the State, to be enacted, or in force and effect now or hereafter; . . ."

The court there said:

"Viewed in the light of the rules hereinbefore enunciated, we are persuaded that it must be held in the instant case that by the antenuptial agreement appellant intended to and did waive her right to a family allowance. The wording of the contract makes it clear that appellant and decedent intended to settle, for a consideration of $5,000 paid to the former, 'all rights, which, as widow of party of the first part, she might otherwise have.' The language of the court in *Estate of Yoell*, 164 Cal. 540, 550 [129 P. 999], which involved the question of whether a widow had waived her right to a family allowance, is cogently applicable to the cause now before us: 'To establish such relinquishment of right, no more apt words could be chosen than those deliberately employed in the agreement under consideration. True, it does not in terms and by name relinquish the right to a family allowance, but it does more than this. *The wife covenants that she has renounced and waived all claims which she has or may have as heir of the husband or as his surviving wife. It is only as heir and surviving wife that she could make her demand for a family allowance, a demand which she has solemnly renounced.*' (Em-

phasis added.) (See also *Estate of McCoy*, 51 Cal.App.2d 483 [125 P.2d 71].)''

In *Estate of Wamack*, 137 Cal.App.2d 112 [289 P.2d 871], appellant, prior to his marriage to decedent, executed an antenuptial agreement with decedent providing that decedent should retain ownership of all her property with the ''exclusive right to dispose of any and all property'' she ''now owns'' or ''may hereafter acquire or receive, as her own absolute and separate property without interference or claim'' by Mr. Wamack, ''and in like manner as if said marriage had not taken place.'' The court held, at page 115:

''Neither is appellant entitled to a family allowance. Such income is specifically mentioned in the agreement, and is clearly comprehended among the benefits to be anticipated by a prospective husband. By reserving the 'Exclusive right' to dispose of all her property and income, decedent could have meant nothing other than that she was keeping all she had for herself and would bequeath it to anyone she might choose. Having by contract renounced all interest in and right to decedent's property, appellant has no basis for demanding a family allowance. (*Estate of Yoell*, 164 Cal. 540, 550 [129 P. 999].) In *Estate of Schwartz*, 79 Cal.App.2d 308 [179 P.2d 868], where each contracting party had waived all claims to inherit, it was held that the right to a family allowance had been waived.''

In *Estate of McCoy*, 51 Cal.App.2d 483 [125 P.2d 71], a property settlement agreement entered into by the parties provided in part that

'' 'Each party to this agreement in consideration of the covenants and considerations above set forth hereby expressly waives his or her right to administer the property or estate of the other party in the event of his or her death; each party hereby waives any claim to inherit any share or portion of the estate of the other, by heirship, descent, succession or otherwise, unless by the will of the decedent. . . .

'' '. . . each party specifically discharges the other from all liability for maintenance as husband or wife, or otherwise, in consideration of the covenants and transfers of property herein set forth, each party hereby waives and releases the other from all claim, other than as herein stated, to alimony, support money, . . .

'' 'The parties agree . . . that this instrument constitutes a full and complete settlement between the parties of all of

their property rights, and of all claims of either party arising out of the marital relation of the parties.' "

After discussing the holdings in *Estate of Bidigare*, 215 Cal. 28 [8 P.2d 123], *Estate of Yoell*, 164 Cal. 540 [129 P. 999], and *Estate of Shapero*, 39 Cal.App.2d 144 [102 P.2d 569], the court said:

"Applying the rules hereinbefore set forth to the particular contract involved in the instant case, we believe it must be held that appellant, in and by said agreement, intended to and did waive her right to a family allowance. The language used in the contract under consideration is far more inclusive than the language used in any of the cases in which it was held that the right to a family allowance was not waived. It is clear from the agreement that appellant and deceased intended to settle all present and future rights as against each other and against their respective estates. Each party in said agreement waived all right to administer the estate of the other and all claim to inherit any part of the estate of the other; and each party discharged the other from all liability for maintenance of the other; and, finally, both parties agreed that said agreement 'constitutes a full and complete settlement between the parties of all of their property rights, and *of all claims of either party arising out of the marital relation of the parties.*' (Italics ours.)

"We conclude, therefore, that taking the agreement as a whole, and applying to it the elementary rules of construction, appellant in and by said agreement waived her right to a family allowance, and that the trial court did not err in denying her petition therefor."

In *Estate of Howe*, 81 Cal.App.2d 95 [183 P.2d 329], it was stated in the prenuptial agreement:

" 'That neither party shall at any time claim any interest in the separate property of the other, except that in the event of the death of either party hereto, the survivor shall be entitled to any devises or bequests, if any, in favor of such survivor made in the Last Will and Testament of the said deceased party. And this agreement shall in no wise be construed as a waiver of the right of either party hereto in or to any provision in favor of the survivor as to any devise or bequest made in such Will of such deceased one in favor of the other.' "

The court held as follows:

"The agreement declares that neither party should at *'any time'* claim 'any interest' in the separate property of the

other. It would be difficult, if indeed possible, to select simpler and more comprehensive words. They require no amplification; any time includes all time and any interest includes every interest. There is no need to be specific for the law never has demanded emphasis. The respondent's efforts to obtain the homestead therefore asserts a 'claim' clearly foreclosed by the terms of the agreement. And the agreement being valid in every respect it must be upheld. (See *Estate of Yoell*, 164 Cal. [540] 550 [129 P. 999]; *Estate of Schwartz*, 79 Cal.App.2d 308 [179 P.2d 868].)

"With regard to the widow's allowance the record on appeal is silent as to whether there was community property from which it could be paid. The parties were married about 13 years before the husband died and it therefore must be assumed that there was evidence to support the court's order to this extent."

■ In the instant case, in the absence of a record showing the circumstances under which the agreement involved was made, our interpretation of it is confined to the document itself. It appears therefrom that the purpose was to provide that each party would retain his or her separate property and to agree with respect to the distribution and division thereof in the event of death or in the event of unforeseen difficulty or disagreement. It was agreed that

"(2) It is understood that either of us may by will either heretofore or hereafter made, dispose of our entire separate property to such persons and in such manner as we may choose, and that the survivor of us shall not have a claim against the estate of the other unless some devise or bequest is left by the decedent to the survivor."

In this quoted language Ethel Brisacher clearly states that she shall not have a claim as surviving widow against the estate of the decedent, thus waiving any claim for a family allowance from his estate.

■ In *Estate of Lufkin*, 131 Cal. 291, 293 [63 P. 469], the term "claim" is defined as follows:

"The term 'claim,' in its usual and proper sense, is broad enough to include the statutory claim or right of the widow to an allowance from the estate of the testator, and, where a different intention is not manifested by the context, must be so construed. (Code Civ. Proc., § 16.)" See also *Estate of Walker*, 169 Cal. 400, 403 [146 P. 868].

■ In the instant case the record before us is silent as to whether there was community property from which an order

for a family allowance could be paid. Apparently the parties lived together as husband and wife for many years and it therefore must be assumed that there was evidence to support the trial court's order to this extent. (See *Estate of Howe,* 81 Cal.App.2d, *supra,* 95, 99.)

The orders granting a family allowance are modified by adding to each of said orders the words "Said allowance is payable only to the extent of the community property being administered in said estate." As so modified the orders are affirmed.

Shepard, J., concurred.