[Civ. No. 21625. First Dist., Div. One. July 8, 1964.]

Estate of FRED C. WIEDEMANN, Deceased. CHAR-
LOTTE L. WIEDEMANN, Plaintiff and Appellant, v.
HOWARD C. WIEDEMANN, as Executor, etc., De-
fendant and Respondent.

Barnett & Wood and Edmund S. Barnett for Plaintiff and Appellant.

C. Wadsworth White for Defendant and Respondent.

SULLIVAN, J.—On this appeal from an order denying family allowance,[1] the single question for our determination is whether decedent's widow waived her right to such allowance.

Appellant Charlotte L. Wiedemann is the widow of Fred C. Wiedemann who died a resident of Contra Costa County on March 18, 1963, at the age of 81 years. Mr. and Mrs. Wiedemann had been married for about nine and a half years. Each had been married once before, had children and grandchildren by such prior marriages and had acquired separate property. Mr. Wiedemann had two adult children by his former marriage, one of whom is respondent executor. There were no children born issue of the marriage between decedent and appellant.

Decedent died testate and his will was duly admitted to probate. By its terms all of decedent's estate of a value of at least $400,000 was devised and bequeathed to his two children of his former marriage to the exclusion of appellant.

The executor filed in the court below written opposition to appellant's application[2] for a family allowance, asserting that the granting of such allowance in *any* amount was contested by the two devisees of decedent's will. The basis of the opposition was that appellant had waived her right to a family allowance by a postnuptial property settlement agreement entered into between her and decedent.

At the hearing of the petition there was received in evidence an agreement entered into by appellant and decedent on September 1, 1959, approximately six years after they were married, entitled: ''Agreement between husband and wife concerning status of their respective properties, for ir-

---

[1]The order is appealable. (Prob. Code, § 1240.)

[2]The petition for family allowance was incorporated in the petition for probate filed by decedent's son, respondent herein. It is clear from the record that this was done at the request of appellant's independent counsel. The application was therefore in reality appellant's and we so treat it.

revocable designation of insurance beneficiary, post mortem assurances and waivers of rights to inherit by will, etc." For convenience we hereafter refer to the above instrument as the "agreement."

After prefatory recitals[3] the agreement sets forth in section 1 thereof covenants to be performed by decedent providing for the following: (1) the establishment of an irrevocable trust (to be known as the "Fred C. Wiedemann Family Trust") with appellant as its principal income beneficiary, having as its corpus a certain $65,000 promissory note payable to decedent, payments to appellant to begin one year after decedent's death; (2) the irrevocable designation of appellant as the sole beneficiary of two life insurance policies upon decedent's life in the aggregate amount of $20,000; and (3) the maintenance of title to the family home in the names of the parties as joint tenants.

In section 2 of the agreement, appellant agrees that she accepts the benefits under the trust as "one of the major considerations" for the agreement and that the title to the family home shall be kept in the names of the parties as joint tenants "in order that the survivor of the parties hereto may receive and take full title to the same. . . ."

In section 3 of the agreement both parties agree that neither of them "shall change the present status" of a certain joint tenancy bank (savings) account and that "they will not draw said savings bank account below the sum of $15,000.00, in order that there shall be not less than the cash sum of $15,000.00 for the survivor of them."

Section 5 of the agreement, after declaring that each of the parties has separate property (first paragraph[4]), provides in

---

[3]The opening paragraph states: "WHEREAS, the undersigned FRED C. WIEDEMANN and CHARLOTTE L. WIEDEMANN are husband and wife, their said marriage being the second marriage for each of them, as widower and widow, after having children and grandchildren of their first marriages and each having acquired separate property through the said first marriages, and they have therefore made and agreed upon certain arrangements (as hereinafter set forth) for the ownership and recognition of the different properties and interests which are hereinafter dealt with, for their respective individual benefits and for the benefits of their separate heirs."

[4]The first paragraph of section 5 provides: "That each party has certain separate property acquired by the said party prior to the marriage of these parties, the separate property in each case consisting of the property held or owned by the party prior to this marriage together with the natural increment and product thereof, which is also hereby acknowledged to be the separate property of such party."

the next two paragraphs as follows: "Each party hereby recognizes the continued separate property status of the separate property so owned by the other party hereto (excepting, however, such separate property as either of them may have contributed to the joint-ownership properties hereinabove referred to) and each party hereby expressly waives any right or interest in the separate property of the other.

"Furthermore, each party hereto waives any right to inherit from the estate of the other party hereto, either by will or otherwise, it being mutually agreed between the parties hereto that the provisions for each of them to receive property upon the demise of the other, as hereinabove set forth, are sufficient and adequate and are all that is intended to be received by either party."

In the fourth and final paragraph of section 5 the parties acknowledge that they intend to will their separate property to the issue of their respective prior marriages and that neither of the parties expects to inherit from the other. We set forth the entire paragraph in a footnote.[5]

The record discloses and the parties agree that the principal issue raised in the court below was whether appellant by executing the above-mentioned agreement, had waived her right to a family allowance and that the court in denying such allowance decided this issue against appellant.[6] This appeal followed.

Section 680 of the Probate Code provides that a widow is

---

[5]The last paragraph of section 5 provides: "It is understood that each party hereto intends to will the entire balance of his and her separate property to their issue, respectively, of their respective prior marriages and that neither of them will expect to inherit from the other by will or in the absence of will. It is therefore further expressly agreed that each party hereto shall not inherit from the other party by will or otherwise, except as hereinabove set forth, allowing for any additions to or substitutions for the various joint tenancy holdings hereinabove set forth, and each party therefore hereby further agrees that in the event either he or she should receive or be entitled to receive any personal or real property of any nature whatsoever under the last will and testament of the other party hereto, that each and all of such real and personal property shall then be received by the contracting party herein as trustee for the immediate heirs at law of the deceased party, and that he or she will immediately distribute the same to said heirs at law upon the receipt thereof."

[6]The court permitted appellant, who was the sole witness at the hearing, to introduce evidence as to the amount of the allowance, which evidence was to be considered by the court in the event it decided she had not waived an allowance. Appellant's testimony was devoted mainly to justifying a claimed monthly allowance of $807.

entitled to an allowance for her maintenance out of her husband's estate during the progress of its settlement. ■ "[A] family allowance was intended by the Legislature to continue, during the settlement of the estate, the support that the wife was previously receiving or was at least entitled to receive. [Citations.]" (*Estate of Brooks* (1946) 28 Cal.2d 748, 755 [171 P.2d 724].) However, as was said in *Brooks, supra,* the mere fact that an applicant is the decedent's widow does not confer upon her an absolute statutory right to such an allowance for "[a]n applicant may have waived her right to an allowance by an agreement to that effect [citations], or may have lost that right by her conduct. [Citations.]" (P. 750.)

No contention is here made that appellant lost her right to a family allowance by her conduct. We therefore face the simple question: Did she in her above-mentioned agreement with her husband waive such a right? ■ Since in the court below the construction of the agreement was based solely on the terms of the written instrument without the aid of extrinsic evidence, under familiar principles of appellate review we are not bound by the interpretation given to it by the trial court and we therefore proceed, as it is our duty, to make the final determination in accordance with the applicable principles of law. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; *Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 381 [267 P.2d 257].)

■ Family allowances are strongly favored in the law. (*Estate of Filtzer* (1949) 33 Cal.2d 776, 783 [205 P.2d 377]; *Estate of Whitney* (1916) 171 Cal. 750, 755 [154 P. 855]; *Estate of Goulart* (1963) 218 Cal.App.2d 260, 264 [32 Cal. Rptr. 229].) ■ While, as pointed out above, they may be waived by contract (*Estate of Brooks, supra,* 28 Cal.2d 748, 750) whether the right has been thus surrendered in a particular case is a question of the interpretation of the contract involved. (*Estate of Whitney, supra,* 171 Cal. 750, 756.) ■ Where, as in the case at bench, the spouses have lived together until the husband's death under conditions that made him liable for her support until that time, the right should not be held to have been surrendered by an agreement between the spouses except by clear and explicit language (*Estate of Whitney, supra; Estate of Bidigare* (1932) 215 Cal. 28, 30 [8 P.2d 123]; *Estate of Shapero* (1940) 39 Cal. App.2d 144, 146 [102 P.2d 569]; *Estate of Schwartz* (1947) 79 Cal.App.2d 308, 309 [179 P.2d 868]; *Estate of Brisacher*

(1959) 172 Cal.App.2d 392, 396 [342 P.2d 384]) and any uncertainty in the language of the agreement will be resolved in favor of the right (*Estate of Bidigare, supra*; *Estate of Myers* (1931) 115 Cal.App. 443, 446 [1 P.2d 1013] ; *Estate of Van Der Oef* (1963) 212 Cal.App.2d 155, 158 [27 Cal.Rptr. 855] ; *Estate of Brisacher, supra*).

Applying the above rules to the agreement entered into by the parties on September 1, 1959, we are of the opinion that appellant did not intend to, nor did she thereby, waive her right to a family allowance. As respondent conceded at oral argument, nowhere does such agreement contain an *express* waiver of family allowance in so many words. The requisite waiver satisfying the above rules must then be found in ''clear and explicit'' language within the four corners of the instrument or more particularly, as the parties seem to agree, within the compass of section 5 thereof.

It is clear that no waiver can be fashioned from the language of the first two paragraphs of section 5. (See footnote 4, *ante.*) These paragraphs deal with the presently existing property rights of the spouses and make no mention either of the husband's obligation of support or for that matter of the property rights of either party upon the death of the other. These last named property rights are dealt with in the third paragraph. Here, as we have set forth above, each of the spouses ''waives any right to *inherit* from the estate of the other party.'' (Italics added.) This clause by its specific language is restricted to a right to inherit and cannot with any logic or reason be construed to include a right to family allowance let alone to articulate such a subject in clear and explicit language. Nor is the subsequent participial phrase reciting the sufficiency of the provisions of the agreement for each spouse to *receive property* susceptible of any such construction. This language relates to the waiver of the right to inherit with which it is coupled and by even its own terms deals with the receipt of *property* not allowances. The basic intention here expressed is that neither party shall *inherit* any property of the other. This is confirmed by the fourth and final paragraph of section 5 in which the parties declare that each intends to will his or her entire estate to the issue of their respective prior marriages. (See footnote 5, *ante.*)

As we view it, section 5 is limited to a waiver of the proprietary interest of each spouse in the property of the other both during the respective lifetime of each and at death by the surrender on the part of the survivor of all right to

inherit. Waiver of a right to inherit does not encompass waiver of a family allowance since by nature and definition the latter right is different from the former. (*In re Noah* (1887) 73 Cal. 583, 588 [15 P. 287, 2 Am.St.Rep. 829] ; *Estate of Brooks, supra,* 28 Cal.2d 748, 752.) It is true that under the Fred C. Wiedemann Family Trust established pursuant to the agreement, appellant is to receive annual sums of money for her support. However, under the terms of the trust, payments are to commence one year after decedent's death and even then are to be only in such amounts as "in the sole and exclusive judgment and discretion of said TRUSTEES" will be sufficient for her needs.[7] Furthermore, so far as this record discloses, the corpus of the trust, although subject to additions, consisted only of a promissory note dated September 1, 1959 (the same date as the agreement) apparently payable in installments not here ascertainable which installments are first subject to the payment of tax on long-term capital gain income.[8] The support

[7]The declaration of irrevocable trust executed by decedent was received in evidence and is before us. After directing the accumulation of all income from the trust estate until one year after his death and directing that during such period no disbursements be made (with exceptions not here relevant), the trustor directs as follows: "Commencing on a date one year after my demise, the TRUSTEES shall pay and disburse from this trust . . . : (A) To CHARLOTTE L. WIEDEMANN, in the event that she survives me . . . : (1) Such annual sum or sums of money as, *in the sole and exclusive judgment and discretion* of said TRUSTEES, shall be necessary to provide her with sufficient net income (or total of income and non-income benefits from this trust), after payment of income and other taxes assessed against her and against her home, so that without requiring her to invade or exhaust whatever assets or other estate she may then have, she will have sufficient money thereby with which to maintain her home and with which to provide for all of her normal and usual expenses of living at the same level and standard of living which we have enjoyed together during our lifetime. In so deciding the TRUSTEES shall consider her net income, if any, from other sources." (Italics added.)

[8]The pertinent paragraph of the declaration of trust (contained in section (3)) provides: "Concerning the promissory note so transferred to said TRUSTEES, they are advised that my cost basis for the property so sold (acquired by me and held since approximately 1934 and therefore sold upon a long-term capital gain basis) had a cost basis of approximately $10,000.00 and that, therefore, as the payments are received in installments upon said promissory note, said TRUSTEES will and shall report the receipts of payment thereunder as long-term capital gain income upon this basis and in transferring this trust property to them it is with the understanding that as they receive that income and those payments for which my cost basis is as set forth above, that they shall pay the proper income taxes thereupon."

payments from the trust therefore do not commence until a year after decedent's death and appear somewhat uncertain in amount and manner of payment. We find nothing in these circumstances which impels us to modify or deviate from our foregoing conclusion.

Applicable here, we think, is the rationale of the court in *Estate of Woodburn* (1931) 212 Cal. 683 [300 P. 22]. In that case the probate court set aside decedent's estate to his widow despite an antenuptial agreement entered into between the spouses which contained a provision that each of them "does hereby expressly waive and relinquish any and all right, title and interest in and to any property either real or personal now owned or that may be hereafter acquired by . . . [the other], and does further expressly waive and relinquish any and all right of inheritance" in any such property which either of the spouses "might be entitled to by reason of being" the spouse of the other. Affirming the order the court said: "Upon the merits of this appeal we are of the opinion that the *antenuptial settlement* entered into between G. A. Woodburn and the lady who was to become his wife and widow and who is the respondent herein, while the parties thereto *expressly waived* and relinquished each on his and her own part *all right, title and interest in the property* then owned or thereafter to be acquired by the other party, and *all right of inheritance* therein to which either party might be entitled as the husband or wife of the other, *cannot be held* to have accomplished *a waiver of those rights to which the widow or minor children*, if any, of a decedent *are entitled* under the provisions of article I, chapter V, part III, title XI of the Code of Civil Procedure. The provisions of said chapter and article *expressly relate to the support of the family of a decedent*, and to which *the widow and minor children* of said decedent *become entitled upon his death* and the probate of his estate, *without regard to any interest which they or any of them may have had in the property of said decedent during his lifetime, and without reference to their heirship or right of inheritance therein*." (212 Cal. at p. 687; italics added. In accord: *Estate of Myers, supra*, 115 Cal.App. 443, 445; *Estate of Shapero, supra*, 39 Cal.App.2d 144, 147.)

▮ Respondent's counsel invites our attention to the memorandum of points and authorities filed by him in the court below stating that "[w]e see no benefit in reiterating them" in the brief for respondent. While we have examined

the memorandum, we point out that such a method of presenting arguments on appeal does not conform to the rules of this court (Cal. Rules of Court, rules 14(a), 15(a) and 37) and does not properly satisfy counsel's obligation to assist this court.

Respondent relies on *Estate of Wamack* (1955) 137 Cal. App.2d 112 [289 P.2d 871]. There the parties entered into an antenuptial agreement under which the decedent wife retained ownership of all her property with the " 'exclusive right to dispose of any and all property' " she " 'now owns' " or " 'may hereafter acquire or receive, as her own absolute and separate property *without* interference or *claim*' " by decedent's husband " 'and in like manner *as if said marriage had not taken place.*' " (Italics added.) The agreement further provided that the husband would not make any claim to any interest in the estate to which he as surviving husband might be entitled to but for the agreement. The court said: "Neither is appellant entitled to a family allowance. Such income is specifically mentioned in the agreement, and is clearly comprehended among the benefits to be anticipated by a prospective husband. By reserving the 'exclusive right' to dispose of all her property and income, decedent could have meant nothing other than that she was keeping all she had for herself and would bequeath it to anyone she might choose. Having by contract renounced all interest in and right to decedent's property, appellant has no basis for demanding a family allowance. (*Estate of Yoell,* 164 Cal. 540, 550 [129 P. 999].) In *Estate of Schwartz,* 79 Cal.App.2d 308 [179 P.2d 868], where each contracting party had waived all claims to inherit, it was held that the right to a family allowance had been waived." (Pp. 115-116.)

It is to be noted that in *Wamack,* as distinguished from the instant case, the decedent reserved the right to dispose of her property without *interference* or *claim* of the husband. The latter term has been held to be sufficiently broad to include the statutory claim or right of a widow to a family allowance. (See *Estate of Lufkin* (1901) 131 Cal. 291, 293 [63 P. 469] ; *Estate of Brisacher, supra,* 172 Cal.App.2d 392, 400.) It is not found in the instrument before us. Furthermore in *Estate of Schwartz, supra,* 79 Cal.App.2d 308, on which *Wamack* relies, the wife accepted $5,000 under an antenuptial agreement *"in place and instead of all rights, which, as widow of party of the first part, she might otherwise have, either as a homestead community interest or otherwise or as a*

*distributive share of the estate, by operation of law, ...*"
(P. 310.) It is therefore clear that the agreement in *Schwartz*
embraced within its terms a waiver of family allowance since
this was such a right that the surviving spouse *as a widow*
might otherwise have. Considered in the light of their respec-
tive particular facts, neither *Schwartz* nor *Wamack* stands
for the broad proposition that a waiver of the right to inherit
is per se a waiver of the right to a family allowance.[9] (Cf.
*Estate of Woodburn, supra,* 212 Cal. 683, 687.) We therefore
find *Wamack* distinguishable from the case before us.

*Estate of Hawkins* (1956) 141 Cal.App.2d 391 [296 P.2d
873], also cited by respondent, did not involve a waiver of
the right to family allowance by contract but the loss of such
right by conduct. It is therefore not in point.

We conclude that in the absence of "clear and
explicit language" to that effect (*Estate of Whitney, supra,*
171 Cal. 750, 756) appellant did not waive her right to
family allowance in the agreement before us.

Respondent complains that appellant "is seeking to
retain the money and valuable benefits of the postnuptial
agreement and, inconsistent therewith, to obtain separate
property estate of the decedent in the form of family allow-
ance...." The simple answer is, as we have pointed out,
that the waiver of the right to inherit did not include a
waiver of the right to a family allowance. Her right to the
allowance is merely a right to prefer a charge against the
estate. (*Estate of Moore* (1915) 170 Cal. 60, 62 [148 P.
205].) That the charge will be payable out of, and thereby
reduce decedent's separate estate, is beside the point.

It is also urged that appellant's position is inconsistent
"in that she has nothing whatsoever to come to her from the
probate estate, yet she is seeking family allowance which
under a law (Prob. Code, § 680) intended only to provide
interim support for a widow (or minors) between the date of
death and the time when the distributees will receive the
proceeds of the estate, ..." Respondent argues that there is
no interim "waiting period" in the instant case because
appellant has fully received her benefits under the agree-
ment. Respondent cites no authority for his apparent thesis

---

[9]A careful reading of the language in *Wamack, supra,* in which
reference is made to *Schwartz, supra* (see excerpt quoted *supra*) per-
suades us that the decision in *Wamack* did not rest on any such broad
rule but rather on the particular language of the agreement pointed out
by us *supra.*

that the family allowance is only interim support for the widow or family until she or they receive their share of the estate on distribution. We are convinced that the thesis is completely untenable. Under Probate Code section 680 the widow's right to a family allowance does not depend upon her right to have all or some of the estate distributed to her. The statute neither expressly nor by reasonable implication so provides. The purpose of the statute is to maintain the security of the family during the period of affliction and loss following death. (See *Estate of Jacobs* (1943) 61 Cal.App.2d 152, 156 [142 P.2d 454].) It is *not* to maintain the family during such period *because* or *until* they share in the estate but *irrespective* of whether they do or not. A widow is entitled to a family allowance "regardless of whether or not she has any right in and to the corpus of the estate or its income." (*Buck* v. *McLaughlin* (9th Cir. 1931) 48 F.2d 135.)

The order appealed from is reversed and the cause is remanded to the trial court with directions to take such further proceedings as may be necessary not inconsistent with this opinion.

Bray, P. J., and Molinari, J., concurred.